232 N.J. Super. 324 (1989)
556 A.2d 1310
ARROW INDUSTRIAL CARRIERS, INC., PLAINTIFF,
v.
THE CONTINENTAL INSURANCE COMPANY OF NEW JERSEY, THE DILKS AGENCY, INC., GERALD WATSON, PATRICIA WISNIEWSKI, JOHN DOE AND JANE DOE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided January 26, 1989.
*325 William J. Kinnear, III for plaintiff (John A. Almeida, attorney).
James W. Johnson for defendant The Continental Insurance Company of New Jersey (Clark, Ladner, Fortenbaugh & Young, attorneys).
GOTTLIEB, J.S.C.
Plaintiff Arrow Industrial Carriers, Inc. ("Arrow") and defendant The Continental Insurance Company of New Jersey ("Continental") have each moved for partial summary judgment. A resolution of the basic issue presented has not been decided previously by a reported decision of the courts of this State. That issue is whether an inland marine policy which provides insurance coverage for cargo damages and which itemizes coverage resulting from a collision between the conveyance and any other vehicle or object, clearly excludes coverage for a collision between the cargo and a bridge, where the truck conveyance is not involved in a collision. Because of the overall ambiguity in the policy's language, the court concludes that coverage must be afforded.
Arrow filed a complaint against Continental, The Dilks Agency, Inc. ("Dilks"), Gerald Watson, Pat Wisniewski and John Doe and Jane Doe, the latter two being fictitious parties under R. 4:26-4. It is claimed that the four individual defendants are employees of Dilks. The complaint has four counts and seeks: in the first count, a determination that an insurance policy issued to Arrow by Continental provides liability coverage for a specific event; in the second count, a reformation of the policy in the event the insurance policy does not provide that coverage; *326 in the third count, a finding that Dilks was professionally negligent in providing insurance coverage and, moreover, that Dilks made certain false representations as to the extent of that coverage; and, in the fourth count, the staying of any potential litigation involving the underlying claim against Arrow.
The present motions relate solely to the first count of the complaint. There are no disputed material facts, R. 4:46-2, as to the issues in the first count, even though facts are in dispute concerning the other causes of action. Therefore, the court is able to rule affirmatively on the motions. The court begins by reciting those unchallenged facts.

The Facts.
Arrow was incorporated in December 1985, having Lee R. Lieber ("Lieber") and Richard O'Donnell as its principals. Its business is to haul vehicles, machinery and forklifts from place to place. Lieber selected Dilks to secure appropriate business insurance coverage. Dilks obtained a motor truck cargo policy with Colonial Penn Insurance Company ("Colonial Penn") for a one-year period beginning January 22, 1986. That policy afforded two alternative types of coverage for the transported items. One was an "all risks" coverage and would have insured Arrow against "[a]ll [r]isks of direct physical loss or damage from any external cause." The second type of coverage  "named perils including theft"  itemized eight events for which protection would be afforded, including, "[d]irect physical loss or damage caused by... (5) [a]ccidental collision of carrying conveyance with any other vehicle or object...." Excluded from insurance protection was "[l]oss or damage caused directly or indirectly by the load or any portion thereof or tarpaulin covering thereon coming into contact with any other object unless the carrying vehicle also collides with such object." The policy actually issued by Colonial Penn provided "named perils including theft" alternate coverage.
*327 At the expiration of the term of that insurance coverage, an inland marine policy was obtained by Dilks with Continental. The new policy's term commenced on January 22, 1987, and continued for one year. The replacement policy indicated, in relevant part:
SUBJECT TO ALL THE STIPULATIONS, LIMITATIONS, CONDITIONS AND EXCLUSIONS IN THE POLICY OF WHICH THIS FORM CONSTITUTES A PART AND SUBJECT ALSO TO THE PROVISIONS OF THIS FORM THIS POLICY COVERS: The liability of the Insured as hereinafter provided, with respect to all kinds of goods and merchandise, consisting principally of machinery, automobiles & forklifts (hereinafter referred to as "property"), while such property is in the custody and control of the Insured ... while in due course of transit....
THIS POLICY COVERS
Within the foregoing provisions and exceptions hereinafter provided:
The liability of the Insured, as a carrier for direct physical loss of or damage to the property caused by or resulting from:
(a) Fire, including self-ignition and internal explosion of the conveyance, and Lightning;
(b) Windstorm;
(c) Collision, i.e., accidental collision of the conveyance with any other vehicle or object;
(d) Overturn of the conveyance;
(e) Collapse of bridge, wharf, dock, platform or culvert;
(f) Stranding, sinking, burning or collision of any regular ferry, including General Average and Salvage Charges;
(g) Flood (meaning thereby the raising of any natural body of water).
An endorsement added theft coverage. However, unlike the Colonial Penn policy, the itemization of exclusions from coverage in the Continental policy did not specify damage to the load from contact with another object where the carrying vehicle did not collide as well with that object.
Lieber received a copy of each insurance policy from Dilks. However, he did not read the Colonial Penn insurance policy while it was in effect, nor did he read the Continental policy before the accident. Lieber never had any direct communications with Continental's employees before the accident and he did not rely upon any language in Continental's policy in formulating his understanding of the nature and extent of insurance coverage afforded by that policy.
*328 When Continental provided the inland marine policy, it also had available full liability coverage which would have provided insurance for any liability of Arrow as a motor carrier. Additionally, Continental could have provided an endorsement to the policy actually issued which would have insured against damages resulting from a collision between a cargo load and another object, even if the cargo truck was not involved in that collision.
The application to Continental for issuance of the policy specified "named perils and theft" coverage, although Arrow disputes authorizing that particularization.[1]
On August 6, 1987, Lieber was driving a flatbed truck, which had been identified specifically as a covered conveyance in Continental's policy. Loaded onto the truck was a forklift owned by Public Service Electric & Gas Co. As the truck traveled northbound on Route I-295 in Carneys Point (Upper Penns Neck Township), Salem County, the forklift struck an overpass. The forklift was caused to fall off the truck and onto the roadway. As a result the forklift was damaged. However, the truck itself did not collide with any other vehicle or object.
After the accident, a claim was presented to Continental. By letter of November 4, 1987, it declined coverage since the damage to the forklift "did not arise out of a collision or overturn of a conveyance." Arrow then instituted this suit.

The Issues.
Arrow asserts that the provisions in Continental's policy are ambiguous, and that, in accordance with normal rules of construction of insurance policy language, the policy should be interpreted to afford coverage. Arrow also urges that its *329 reasonable expectations of coverage require that the policy provide insurance protection. Finally, Arrow contends that if it prevails on the motion it is entitled to counsel fees under R. 4:42-9(a)(6).
To the contrary, Continental argues that there is no ambiguity in the policy language. Moreover, Continental claims that any expectation of coverage in Arrow's mind developed, not from the policy language or conduct or Continental's employees, but from communications between Lieber and the employees of Dilks, and Continental is not responsible for another's misunderstanding. Lastly, Continental asserts that Arrow is not entitled to counsel fees.
The court will now discuss its reasoning in deciding these issues as it has, to the extent required.

Any Ambiguity in the Policy Language.
As indicated earlier, Continental's policy was designated by it as an inland marine policy. It was created to cover Arrow's liability for damage to cargo, "[s]ubject to all of the stipulations, limitations, conditions and exclusions in the policy...." While the policy itemizes eight exclusions from coverage as well as eight conditions for coverage, it does not expressly indicate that coverage is not afforded for cargo damage resulting from a collision between the cargo and another object even though there is no collision between the conveying vehicle and another object.
Rather, Continental seeks to preclude coverage by specifying those events for which it is afforded and urging that this specification bars coverage for other events. In essence, Continental is attempting to itemize positive events affording coverage and imply from that a negative, that non-itemized events do not result in coverage, even though it particularized a list of coverage exclusions. That is illogical. It is as if Continental were to issue an insurance policy on the life of an insured *330 (comparable, for this analysis, to insuring cargo), indicate that benefits under the policy are available where the death results from disease or natural causes (comparable to stating certain causes of damage to cargo), advise that self-inflicted causes of death are excluded (comparable to precluding other causes of cargo damage), and then deny coverage where the insured's death is attributable to an automobile accident (comparable to an unitemized but reasonably anticipated cause of damage to cargo).
It does not logically or necessarily follow that a positive implies a negative, especially where the control of itemization of specific positives and negatives of coverage is in the hands of and is actually exercised by one party. It is as logical to infer a positive where an event occurs which is outside the listing of exclusions. It is for that reason that an ambiguity exists. The uncertainty results from the indefiniteness of the obligation of the policy.
An ambiguity arises not only where there are different meanings available because of the specific words used, but also because different meanings are available by reason of words not used. Ambivalence can create ambiguity. Confusion as to the "boundaries of coverage" is the essence of ambiguity. Cf. Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979).
If Continental wished to exclude coverage for a cause of damage to cargo, especially a cause which it anticipated (else why would it define "collision" as it did?), then it could have stated that cause in the list of exclusions. As observed in Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, 35 N.J. 1 (1961): "Moreover, in evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question...." Id. at 7. The import of that reasoning applies, as well, to missing *331 language. Where language, if used, could remove a question, but that language is unjustifiably absent, a court should reflect on that omission in judging an insurer's position.
Furthermore, it is not as if this precise question had never been addressed to any court before now. To the contrary, although not in this State's courts, the issue has been discussed many times, with varying results. For instance, the decisions in Mendelsohn v. Automobile Ins. Co. of Hartford, 290 Mass. 228, 195 N.E. 104 (Sup.Jud.Ct. 1935); Hamilton Trucking Service, Inc. v. Automobile Ins. Co. of Hartford, 39 Wash.2d 688, 237 P.2d 781 (Sup.Ct. 1951); Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 134 Neb. 188, 278 N.W. 374 (Sup.Ct. 1938); Myers v. Continental Ins. Co., 72 Pa. Dist. & C. 77 (Dist.Ct. 1950); Wolverine Ins. Co. v. Jack Jordan, Inc., 213 Ga. 299, 99 S.E.2d 95 (Sup.Ct. 1957); St. Paul Fire & Marine Ins. Co. v. Mose Gordon Constr. Co., 121 Ga. App. 33, 172 S.E.2d 459 (Ct. of App. 1970); Trinity Universal Ins. Co. v. Robert P. Stapp, Inc., 278 Ala. 209, 177 So.2d 102 (Sup.Ct. 1963); Birmingham Fire Ins. Co. of Pa. v. Newsom Truck Lines, 390 S.W.2d 537 (Tex.Civ.App. 1965); Western Cas. & Sur. Co. v. D & J Enterprises, Inc., 720 S.W.2d 944 (Mo.Sup. Ct. 1986); and Canal Ins. Co. v. Howell, 248 Miss. 678, 160 So.2d 218 (Sup.Ct. 1964), involved the same issue and determined that there was no coverage. Conversely, the cases of C. & J. Commercial Driveway, Inc. v. Fidelity & Guaranty Fire Corp., 258 Mich. 624, 242 N.W. 789 (Sup.Ct. 1932); Bucks County Constr. Co., Inc. v. Alliance Ins. Co. of Philadelphia, 162 Pa.Super. 153, 56 A.2d 338 (Super.Ct. 1948); Gould Morris Electric Co. v. Atlantic Fire Ins. Co., 229 N.C. 518, 50 S.E.2d 295 (Sup.Ct. 1948); Jorgenson v. Girard Fire and Marine Ins. Co., 229 Minn. 48, 38 N.W.2d 209 (Sup.Ct. 1949); Continental Ins. Co. v. Griffin, 218 S.W.2d 350 (Tex.Civ.App. 1949); Aetna Ins. Co. v. Cameron, 633 P.2d 1212 (Mont.Sup.Ct. 1981); and Garford Trucking, Inc. v. Alliance Ins. Co. of Philadelphia, *332 195 F.2d 381 (2 Cir.1952), involved the same issue, but decided that there was coverage.
Returning, then, to the incomplete quote from Mazzilli, it concludes: "Moreover, in evaluating the insurer's claim as to the language under study, courts necessarily consider ... also whether judicial decisions appear in the reports attributing a more comprehensive significance to it than that contended for by the insurer." 35 N.J. at 7. For the purposes of this case, it is evident that the question has been presented to many courts with divergent results. Assuming a reasonable degree of knowledge by Continental of events impacting on its method of doing business, Continental should have been aware of the potential problem when it drafted the contract and taken steps to clarify the language, to remove the point from being at issue. That it did not do.
Moreover, in reviewing the policy as a whole, by giving a reasonable meaning to its form and cast, an ambiguity of coverage exists. The policy is entitled an "Inland Marine Policy." It does not specify that it is a "named perils" or "limited risks" policy. On its face, it creates a hidden pitfall, cf. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961), similar to a frustration of the reasonable expectations of the insured.
In Ins. Co. of North Amer. v. Commis. of Ins., 334 Mass. 108, 134 N.E.2d 423 (Sup.Jud.Ct. 1956), the development of inland marine insurance was described:
Inland marine insurance is comparatively new. It is an outgrowth of the development of land transportation. The Federal operation of railroads in the overcrowded conditions of World War I, the inauguration of shipment by motor truck and by airplane, greater mobility of population, and increased traffic in personal property were some of the factors accelerating the need for a type of insurance policy which would cover portable personal property other than at fixed locations. The name itself is a misnomer, and includes many forms of insurance wholly lacking in marine features. While the chief characteristic is a relation to transportation, there are recognized categories which have no such *333 relation. The competition of those in the new field of inland marine insurance led to much controversy with those in the established fields of fire and casualty insurance. [134 N.E.2d 424]
Inland marine insurance necessarily need not be limited in coverage to only certain hazards of dangers to cargo. Unlike the Colonial Penn policy, which noted on its face that it insured only against "named perils including theft," Continental's policy title does not portend any potential problem. While, obviously, the designation of an insurance policy cannot stand as a substitute for an examination of its contents, cf. Merchants Indemnity Corp. of N.Y. v. Eggleston, 37 N.J. 114 (1962) ("In general, an insured is chargeable with knowledge of the contents of a policy, in the absence of fraud or unconscionable conduct on the part of the carrier." Id. at 121), nonetheless it was feasible to alert an insured through the use of a more descriptive term or phrase.
It is not the role of the court to make a better contact for the parties than that which they made for themselves. That is not allowed. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 46 (1960); Middle Dept. Insp. Agency v. Home Ins. Co., 154 N.J. Super. 49, 54 (App.Div. 1977). Rather, the policy itself is both misleading and irrational to any reasonable insured because of the looseness of its wording and the laxity in its references.
The basic purpose of the policy was to insure against damage to or loss of cargo. In providing an insurance policy which, in this specific instance and if read one way, predicated coverage upon collision between the transporting vehicle and another object, Continental featured a casual event having no relationship to the purpose of the policy. Events that happen to the transporting vehicle need not have any effect necessarily on the cargo. This singular corruption of the listing of causal events (requiring that damage to cargo originate from a collision of the transporting vehicle and a third object) creates confusion *334 since it stresses an event not related to the "landscape of risk." Weedo v. Stone-E-Brick, Inc., supra, 81 N.J. at 247. The policy uses words as if they were more important than the realities they represent. The liability of the insured is the same whether or not the truck collided with an object which in turn caused damage to its cargo.
Since it is evident that the purpose of the policy was to insure against loss or damage to the cargo, it is not offensive to its underlying intent to hold that the ambiguity must be construed to afford coverage for damage not only where it results from a collision involving the transporting vehicle, but also where that vehicle is itself not so involved.
Earlier, this court did refer to ten out-of-state decisions which concluded that language was not ambiguous which was the same as or similar to that in Continental's policy. For example, in Hamilton Trucking Service, Inc. v. Automobile Ins. Co. of Hartford, supra, the court decided that:
The words of the part of the policy under consideration must be accorded their ordinary meaning. The language used is plain and unambiguous. There is nothing to interpret or construe. [39 Wash.2d at 692, 237 P.2d 781]
Similar language appears in Mendelsohn v. Automobile Ins. Co. of Hartford, supra:
The words used in defining the peril insured against by this portion of the policy are simple, every day words and the structure of the sentence where they appear is not complicated. There is nothing to indicate that the words are given a peculiar or technical meaning in the enterprise of transporting merchandise by motor truck or in the business of insuring merchandise thus in transit. From the context in which the words are found, it does not appear that any other than their ordinary meaning should be given to the words. [290 Mass. at 230, 195 N.E. 104]
This court disagrees with these determinations for two reasons. The first is that their perspective is too narrow. While specific words may not be ambiguous, the context in which they are used may create an ambiguity. The court's responsibility is to give effect to the whole policy, not just one part of it. *335 Boswell v. Travelers Indemn. Co., 38 N.J. Super. 599, 604 (App.Div. 1956).
The second is that these cases overlook the reality of the world in which the insurance policies were to have effect. The insurance policy specified that the cargo was to consist principally of machinery, automobiles and forklifts. These are objects which, because of their bulk, make it likely that they will extend beyond the sides and over the top of the transporting truck. Because that specifically itemized cargo was typed into the policy, to confine a review of the policy's benefits and limitations to the phraseology defining "collision" is like making plans for a trip without considering the destination. Expressing a disagreement with Plato, the concepts that words represent do not have their own existence; words have relevance only in reference to reality. Isolating the words from the world in which they apply, in order to analyze those words and dissect them for meaning, ill-befits the task.
The heart of any insurance contract is its intent. Kelly, etc. v. Atlantic Mut. Ins. Co., 218 N.J. Super. 395, 404 (App.Div. 1987). The intent may be ascertained by the words used, the contract's purpose and the environment in which the policy is to be implemented. Each of the decisions which held that the words used were not ambiguous failed to give proper weight to the insurance policy's purpose and context.
If the language in an insurance policy "will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied...." Butler v. Bonner & Barnewell, Inc., 56 N.J. 567, 576 (1970). This court follows that instruction in this case.
Because the court has decided that the policy is ambiguous and, as such, must be construed to afford coverage, the court need not address the second issue which concerns Arrow's claim that it had a reasonable expectation of coverage.

*336 Entitlement to Counsel Fees.

The claim for counsel fees is controlled by R. 4:42-9(a)(6). Action on that application is subject to the court's "broad discretion as to when, where and under what circumstances counsel fees may be proper." Enright v. Lubow, 215 N.J. Super. 306, 313 (App.Div. 1987). As noted in that case:
... [E]quitable principles must govern the trial judge's decision. Factors which the court may consider include: (1) the insurer's good faith in refusing to pay the demands; (2) excessiveness of plaintiff's demands; (3) bona fides of one or both of the parties; (4) the insurer's justification in litigating the issue; (5) the insured's conduct in contributing substantially to the necessity for the litigation on the policies; (6) the general conduct of the parties; and (7) the totality of the circumstances [at 313-314; citations omitted]
The court has no reason to doubt Continental's good faith in declining Arrow its defense rights under the policy. As indicated at the beginning of this decision, the issue concerning the proper interpretation of the policy language is novel in New Jersey. Despite that, the court is going to allow Arrow to recover its counsel fees.
The court authorizes that recovery for two reasons. One, the dispute between the parties was created by Continental's use and nonuse of words in the policy it originated. Two, an award of counsel fees gives Arrow "the full benefit of [its] insurance contract without unanticipated expenses over and above the premiums paid." Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 246 (App.Div. 1975). Arrow did nothing to create the dispute, other than to seek enforcement of its rights under the policy.
In conclusion, the court enters partial summary judgment in favor of Arrow and against Continental on count 1 of the complaint, and determines that Arrow is entitled to reimbursement for counsel fees. The precise amount of those fees is subject to the submission of an appropriate affidavit of services. That affidavit shall be filed within 30 days and within 15 days thereafter counsel for Continental may provide comment to the court.
NOTES
[1] While this dispute may be meaningful in order to decide the second and third counts of the complaint, it is not significant in determining these motions on the first count, since it is not disputed that the policy was issued in compliance with the application as communicated to Continental.