**INTERSTATE AERIALS, LLC, Appellant**

v.

**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK; Al Horgan General Contractor, Inc.; Erie Insurance Group; Fictitious Insurance Companies 1–10.**

**No. 08–4901.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 6, 2009.

Filed: Nov. 12, 2009.

Mark B. Shoemaker, Esq., Ward Shoemaker, Woodbury, NJ, for Appellant.

Richard S. Nichols, Esq., Gennet, Kallmann, Antin & Robinson, Parsippany, NJ, for Great American Insurance Company of New York.

BEFORE: SCIRICA, Chief Judge, JORDAN and COWEN, Circuit Judges.

### OPINION

COWEN, Circuit Judge.

Interstate Aerials, LLC ("Interstate Aerials") appeals from the judgment of the United States District Court for the District of New Jersey entered on November 26, 2008, 595 F.Supp.2d 373, denying Interstate Aerials' motion for summary judgment and granting summary judgment in favor of Great American Insurance Com-

pany of New York, *et al.* ("Great American"). We will affirm.

## I.

Interstate Aerials rents and leases construction equipment, including mechanical aerial lifts, to contractors engaged in construction projects. Interstate Aerials delivered an aerial lift to Al Horgan General Contractor, Inc. ("Al Horgan") at one of its construction sites. The lift collapsed, killing an employee of one of Al Horgan's subcontractors. This appeal involves a dispute between Interstate Aerial and its insurer, Great American.[1]

At the time of this incident, Interstate Aerials had a property insurance policy with Great American for "Commercial Inland Marine" coverage. The terms of coverage for leased property are set forth in an endorsement to the policy entitled, "LEASED PROPERTY—CONTINGENT INTEREST FORM," which is also identified as Form F 930. The first page of the endorsement describes the type of property covered by the endorsement as "[p]ersonal property consisting principally of EQUIPMENT USUAL TO AREIAL [*sic*] LIFT." (App.78.) Additionally, there is a subsection on the first page of the endorsement entitled, "LIMITS OF LIABILITY." This subsection limits coverage to $200,000 for "[p]roperty leased to others ... in the custody of any one lessee not specified below." (*Id.*) The second page of the endorsement reiterates that the property subject to this limitation is:

> ... personal property of the Insured, as described in the Schedule, which is: (a) leased or rented to others; and (b) intended for lease or rent to others.

(App.79.)

Notably, the second page of the endorsement also contains a provision entitled, "CONTINGENT COVERAGE," which indicates that:

> When property is in the custody of lessee(s), this insurance applies only if the Insured has obtained: (1) A signed lease/rental agreement which requires the lessee to: (a) be fully responsible for all loss or damages; (b) provide insurance, no less broad as respects perils than that provided by this policy, covering the property to be leased; and (2) Evidence of such physical damage insurance, which names the Insured (lessor) as loss payee, when the value of property leased to any one customer exceeds $50,000.
>
> Insurance under this policy shall not apply until the Insured has exhausted all reasonable efforts to collect the amount of loss or damage from the lessee and its insurer.

(*Id.*)

Great American relied on this contingent coverage provision to deny Interstate Aerials claim, asserting that Interstate Aerials failed to (i) procure a signed lease agreement with Al Horgan for the lift in question, and (ii) procure a certificate of insurance on which Interstate Aerials was named as an additional insured or loss payee.

Interstate Aerials commenced the instant action seeking a declaration that the contingent coverage provision was unenforceable. Upon conclusion of discovery, the parties cross-moved for summary judgment. Great American asserted that it was entitled to judgment due to Interstate Aerials' failure to comply with the terms of coverage as set forth in the endorsement. Interstate Aerials conceded that it failed to comply with both provi-

---

1. The estate of the deceased employee filed a wrongful death action in the Pennsylvania Court of Common Pleas, which is not before this Court.

sions; however, Interstate Aerials contended that the endorsement was unenforceable as a matter of law. In support of this contention, Interstate Aerials asserted that the endorsement was ambiguous and buried at the end of the insurance policy, and therefore, its enforcement would run contrary to any policyholder's reasonable expectation of coverage.

The District Court granted Great American's motion and denied Interstate Aerials' cross-motion. The District Court held that (i) the terms of the policy and endorsement were unambiguous, (ii) the endorsement required Interstate Aerials to comply with the contingent coverage provision, and (iii) Interstate Aerials failed to do so, thereby resulting in no coverage under the policy for the incident claimed. On appeal, Interstate Aerials contends that the District Court committed reversible error by denying its motion and granting Great American's motion. According to Interstate Aerials, it had a reasonable expectation of coverage as (i) the terms of the endorsement were ambiguous, and (ii) the endorsement was buried in the insurance policy. As noted above, Interstate Aerials conceded that it failed to comply with the two requirements of the contingent coverage provision. Accordingly, the sole issue before this Court is whether the contingent coverage provision contained in the endorsement is enforceable under New Jersey law.

## II.

The District Court exercised jurisdiction over this action pursuant to 28 U.S.C. § 1332. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. "The standard of review applicable to the District Court's order granting summary judgment is plenary." *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 466 (3d Cir.2005). We must apply the same test employed by the

District Court under Rule 56(c) of the Federal Rules of Civil Procedure. *Id.*

## III.

Under New Jersey law, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 775 A.2d 1262, 1264 (2001). "In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." *Id.* (quoting *Gibson v. Callaghan*, 158 N.J. 662, 680, 730 A.2d 1278 (1999)). In evaluating insurance policies for ambiguity, courts should "interpret[ ] the policy as a whole, by giving a reasonable meaning to its form and case." *Royal Ins. Co. v. KSI Trading Corp.*, 563 F.3d 68, 74 (3d Cir.2009) (internal quotation marks omitted) (quoting *Arrow Indus. Carriers, Inc. v. Continental Ins. Co.*, 232 N.J.Super. 324, 556 A.2d 1310, 1314 (1989)). An insurance policy is ambiguous when "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Weedo v. Stone–E Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 795 (1979).

It is well-settled that insurance policies are "contracts of adhesion and as such, are subject to special rules of interpretation." *Zacarias*, 168 N.J. at 595, 775 A.2d at 1264. "When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Id.* To avoid "subjecting insureds 'to technical encumbrances or to hidden pitfalls ... policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow.'" *Royal Ins. Co.*, 563 F.3d at 74 (quoting *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 503 A.2d 862, 870 (1986)).

"[C]ourts will depart from the literal text and interpret [an insurance contract] in accordance with the insured's understanding, even when that understanding contradicts the insured's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend...." *Zacarias*, 168 N.J. at 601, 775 A.2d at 1268 (internal citations omitted).

The District Court properly ruled that the endorsement and its contingent coverage provision were unambiguous and enforceable. The parties do not dispute that the endorsement was part of the insurance policy. Nor do they dispute that this endorsement set forth the terms for coverage of leased property, such as the aerial lift at issue in this action, and that the endorsement indicates in plain language that liability for "[p]roperty leased to others" is limited to $200,000. The "CONTINGENT COVERAGE" provision sets forth two conditions precedent to coverage, neither one of which contains technical language or legalese that might confuse the average policyholder. These provisions state in plain language that leased property will be excluded from coverage if Interstate Aerials fails to sign a written lease agreement with the lessee or if the lessee fails to procure physical damage coverage naming Interstate Aerials as the payee.

Interstate Aerials contends that despite this plain language, the contingent coverage provision is unenforceable as it is buried at the end of the insurance policy and is not located on the front page of the endorsement. These contentions lack merit. The policy expressly incorporates all endorsements. The front page of the endorsement informs the policyholder that it is a three-page document. A mere periphery scan of the endorsement indicates that the first page is "(Page 1 or 3) >" as this information is squarely located on the bottom of the page, on the center of the line, set apart from the text of the endorsement. This disclosure negates any assertion that Great American attempted to bury the contingent coverage provision or confuse Interstate Aerials as to the nature of its coverage. Moreover, the headings of the provisions on the second page, including the contingent coverage provision, were written in a large, capitalized font.

Additionally, Interstate Aerials contends that the endorsement operates as the functional equivalent of a declaration and because all terms of a declaration must appear on its front page, the endorsement is unenforceable. This contention, too, lacks merit. First, even if this Court treated the endorsement as a declaration, the contingent coverage provision would be enforceable. It is not the law in New Jersey that insurers must include all exclusions from coverage on the first page of a declaration form or otherwise the exclusions are unenforceable. *See Zacarias*, 168 N.J. at 603, 775 A.2d at 1270 (explaining that "an insurance contract is not *per se* ambiguous because its declaration sheet, definition section, and exclusion provisions are separately presented"). Second, a review of the insurance policy supports the District Court's conclusion that the endorsement was not a declaration. The policy contains a declaration sheet entitled "BUSINESS-PRO POLICY COMMON DECLARATIONS." (App.33.) The declaration sheet informs the policyholder that endorsement CIM F930 "changes the policy." The declaration sheet instructs the policyholder to "[p]lease read [Form F930] carefully." The declaration sheet identifies Form F930 as an endorsement, and not a declaration. Additionally, the declaration sheet instructs the policyholder to review Form F930 carefully for changes to coverage.

Finally, contrary to Interstate Aerials' contention, it is inconsequential that the policy contains another form that is labeled as a declaration sheet. This form does not create confusion. The second form, entitled "BUSINESS INLAND MARINE COVERAGE PART DECLARATIONS PAGE," indicates that all endorsements listed on form CM 88 01 are incorporated as part of the policy. Form CM 88 01 lists endorsement Form F930 as one of the endorsements contained in the policy. Thus, like the declaration sheet discussed above, this form, too, directs the policy holder to Form F930 in plain and simple language.

## IV.

We affirm the District Court's grant of Great American's motion for summary judgment.