CITY AND COUNTY OF SAN FRANCISCO, Counter–claimant–Appellant,

v.

UNDERWRITERS AT LLOYDS, LONDON, Counter–defendant–Appellee.

No. 96–16815.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1997.

Decided April 20, 1998.

James B. Nebel, Flynn, Delich & Wise, San Francisco, CA, for counter-claimant-appellant.

George J. Koelzer, Hancock, Rothert & Bunshoft, LLP, Los Angeles, CA, for counter-defendant-appellee.

Before: SNEED, SCHROEDER and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

To help celebrate the 50th anniversary of the Golden Gate Bridge in 1987, the City and County of San Francisco (CCSF) improvidently borrowed U.S. Navy barges for a fireworks display. CCSF assigned Joseph Peters, a crewman of one of CCSF's own fleet of ships, to lash together two of the barges, but failed to provide him with proper equipment or supervision. He was seriously injured and won a substantial judgment in state court against CCSF.

■ We must now decide whether the standard Protection and Indemnity (P & I) provisions of CCSF's maritime insurance policy cover its liability for this accident. We hold that they do not, because the vessel was owned by the Navy and was not one of the listed vessels, all owned by CCSF, that were insured by CCSF's policy. We therefore affirm the district court.

The procedural background is not complex. Republic Insurance and other insurers not involved in this appeal originally instituted this declaratory judgment action against CCSF. Because at the time of the accident, CCSF was covered by a maritime insurance policy issued by Lloyds of London, CCSF filed a third party complaint against that entity, which filed its answer and made all other appearances in this case as "Hunt and Company." It is therefore referred to in this opinion as Hunt. The district court granted Hunt's motion for summary judgment and certified the order under Fed.R.Civ.P. 54(b) for this appeal.

The issue before us is purely a question of interpretation of the indemnification provisions of the contract. They provide:

[T]his Company hereby undertakes to pay up to the amount hereby insured and in conformity with lines 5 and 6 hereof, *such sums* as the *assured, as owner of the [listed vessels]* shall have become legally liable to pay and shall have paid on account of:

Loss of life, or injury to, or illness of, any person; Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life, injury to, or illness of any member of the crew of the vessel named herein ..."

(Emphasis supplied).

The policy then lists specific vessels owned by CCSF, including a vessel known as "Scow No. 3" to which Peters was permanently assigned as a crew member. The policy, of course, does not list the Navy barges to which Peters was temporarily detailed at the time of the accident.

■ The parties do not quarrel over the law we must apply. We held in *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506 (9th Cir.1984), in construing a similar provision of a marine insurance policy, that we should follow a judicially fashioned federal admiralty rule for maritime P & I policies. That rule, which we summarized in *Bohemia*, and which we noted did not differ significantly from that applied under California state law, is that P & I provisions indemnify vessel owners only if their liability arises out of their ownership of an insured vessel. *See id.* at 508–10. The district court followed that rule in this case and held that the policy did not cover liability for this accident because it arose out of the operation of Navy vessels that were not insured by the CCSF policy with Hunt.

That conclusion would appear to follow almost inescapably from our holding in *Bohemia* and from the law of the Fifth Circuit, which we followed in *Bohemia*. *See id.* at 509 (citing *St. Paul Fire & Marine Ins. v. Transp. Co.*, 500 F.Supp. 1365, 1372–77 (N.D.Miss.1980), *aff'd per curiam*, 666 F.2d 932 (5th Cir.1982)). Indeed, the Fifth Circuit in the *St. Paul* case adopted in every material respect the opinion of the district court that had drawn its ruling, requiring a nexus to the operation of owned vessels, from a consensus of all the reported cases. *See id.* at 945. The Fifth Circuit has continued to follow that principle in subsequent cases. *See e.g. Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 203 (5th Cir.1990);

*Texas Eastern Trans. Corp. v. McMoRan Offshore Explor.,* 877 F.2d 1214, 1227 (5th Cir.1989); *Wiley v. Offshore Painting Contractors, Inc.,* 711 F.2d 602, 614 (5th Cir. 1983).

In this case, as in *Bohemia,* as well as in the Fifth Circuit cases, the operative contract language is standard. It defines the liability for which indemnification is provided to be a liability that the insured becomes liable to pay "as owner" of "listed vessels." The language has been uniformly interpreted to mean that only liability connected with negligent operation of listed ships is covered. Thus, in *Bohemia,* we held that the policy's $100,000 per vessel limitation of liability applied, even though more than one vessel was involved in the accident, because only one owned, insured vessel was negligent. *See Bohemia,* 725 F.2d at 510. Another leading Fifth Circuit case, *Lanasse v. Travelers Ins. Co.,* 450 F.2d 580, 584 (5th Cir.1971), held there was no coverage where a crew member was injured by the negligent operation of a crane that was not located on the ship, and hence the accident did not arise out of the operations of the insured vessel. In *Wedlock v. Gulf Mississippi Marine Corp.,* 554 F.2d 240, 243 (5th Cir.1977), a seaman was injured as a result of the negligence of both a tug owner and a barge owner. Because the barge owner had chartered the tug, the barge owner was listed as an insured on the tug owner's policy. Yet the court held that the barge owner was not entitled to indemnification for negligence arising out of the ownership of the barge. The reason was that the barge itself was not an owned vessel listed in the tug owners' insurance agreement.

The problem for CCSF, in this case is that this accident had nothing to do with the operation of any insured ship. Recognizing this difficulty, CCSF contends that there is nevertheless coverage because the injured employee was permanently assigned as a crew member of an insured ship, Scow No. 3. CCSF argues the permanent assignment creates a sufficient nexus to CCSF's ownership and operation of that vessel to come within the P & I coverage. CCSF stresses that the state court held that because of his permanent assignment to Scow No. 3, Peters was a seaman entitled to damages under the Jones Act. CCSF insists that the coverage under this P & I policy is as broad as CCSF's liability under the Jones Act for seamen in its employ.

We must reject this position. There is no authority for it in either the language or purpose of the P & I provisions, or in the cases applying them. The P & I provisions represent a clear agreement for indemnification of liabilities arising out of the operation of specific vessels. Were we to hold that the insured is free to transfer its employees to ships other than the listed ships, including borrowed ships owned by third parties, we would greatly extend the coverage beyond what could have been reasonably understood by the parties when they listed the insured's owned ships to be insured.

The judgment of the district court is AFFIRMED.