PHOENIX ASSURANCE PLC,
et al., Plaintiffs,

v.

MARIMED FOUNDATION FOR
ISLAND HEALTH CARE
TRAINING Defendant.

No. CIV. 99-643 ACK.

United States District Court,
D. Hawai'i.

Jan. 21, 2000.

George H. Keller, Boughey Garvie & Bushner, Honolulu, HI, for plaintiffs.

Paul Alston, Jason H. Kim, Alston Hunt Floyd & Ing, Honolulu, HI, for defendant.

Magali Sunderland, Trecker & Fritz, Honolulu, HI, for intervenors.

*ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S ALTERNATIVE MOTION FOR A STAY*

KAY, District Judge.

## BACKGROUND

Marimed Foundation for Island Health Care Training ("Marimed") is a Hawaii corporation. Phoenix Assurance Plc and the other plaintiff marine insurance companies are alien insurance companies and/or citizens of states other than Hawaii (collectively, "Underwriters"). As part of its business, Marimed runs therapeutic, ship-based residential treatment programs for emotionally disturbed adolescents. One of the vessels that Marimed uses for these services is the *Tole Mour*, which the Underwriters insured through a chain of insurance brokers. The Underwriters provided Marimed with insurance for the *Tole Mour* against marine hull and machinery risks and marine protection and indemnity ("P & I") risks at all relevant times. *See* Complaint ¶ 8. The P & I provisions cover Marimed's legal liability for personal injuries incurred as the owner of the *Tole Mour* resulting from an accident that is not insured under any other insurance obtained by Marimed. *See* Complaint ¶ 20.

In addition to its coverage through the Underwriters, Marimed insured the *Tole Mour* through the Monticello Insurance Company ("Monticello"), a Delaware corporation. Monticello provided Marimed with commercial general liability and professional liability insurance coverage. *See* Complaint ¶ 9; Def.'s Memo. in Sup. of Mot. at 3. The Underwriters allege in their Complaint that this policy with Monticello was specifically sought to cover liability for sexual misconduct arising out of Mar-

imed's professional services as a treatment facility. *See* Complaint ¶ 12.

Sometime in April or May of 1996, Todd Thompson ("Thompson") participated in one of Marimed's ship-based residential treatment programs. This treatment took place, in part, on the *Tole Mour*. In a lawsuit filed in Hawaii state court,[1] Thompson (through his mother as next friend) alleges that while participating in the program, both on board the *Tole Mour* and during land-based segments, he was sexually assaulted by two other program participants. Thompson's lawsuit (the "Thompson suit") sued Marimed, among other entities, for: negligence, negligent failure to warn, negligent and/or intentional infliction of emotional distress, loss of filial consortium, Jones Act negligence, unseaworthiness, and maintenance and cure.

Upon being sued by Thompson, Marimed tendered the action to both the Underwriters and Monticello. Monticello disclaimed any obligation to defend or indemnify Marimed for the Thompson suit; Marimed and Monticello are currently engaged in lawsuits in Hawaii state court regarding whether or not Monticello is obliged to defend and indemnify Marimed against the Thompson civil action ("Monticello coverage litigation").[2] As for the Underwriters, the Thompson suit made allegations that, if true, would make Thompson's claims within the coverage of the Underwriter's P & I policy.[3] The Underwriters accepted defense of the Thompson suit under a reservation of rights; the Underwriters thereby engaged insurance defense counsel to represent Marimed in the Thompson suit. Although these attorneys owe their attorney-client obligations to Marimed, their bills are paid by the Underwriters.

---

1. *Thompson v. State of Hawaii,* Civ. No. 98–16112–04 (Haw. Ct. filed Apr. 3, 1998) (First Circuit).

2. *Monticello Ins. Co. v. Marimed Found.,* Civ. No. 99–1792–05 VLC (Haw.Cir.Ct.) (First Circuit); *Marimed Found. for Island Health Care*

*Training v. Monticello Ins. Co.,* Civ. No 99–1487–04 DDD (Haw.Cir.Ct.) (First Circuit). According to Def.'s Memo. in Sup. of Mot. at 3 n. 1, these actions have been consolidated.

3. *See* Letter from Underwriters' counsel to Marimed, Exhibit D of Complaint.

On September 20, 1999, the Underwriters filed a complaint in admiralty for declaratory relief. The Complaint prayed for this Court to declare, for various reasons, that there is: 1) no coverage under the marine insurance Marimed held on the *Tole Mour* through the Underwriters, and therefore 2) no duty for the Underwriters to defend the Thompson civil action. *See* Complaint at 8. Specifically, the Underwriters, in their first claim for relief, claim that there is no coverage, and therefore no duty to defend because one or more of the following is true: 1) sexual assaults are not "accidental" and liability from such assaults is uninsurable under the public policy of Hawaii; 2) the emotional distress and mental suffering damages claimed in the Thompson suit do not constitute "personal injuries;" 3) the Underwriters only cover liability arising from Marimed's ownership of the *Tole Mour*, and the Thompson suit arises out of professional services, not vessel ownership; and 4) Marimed tailored its insurance coverage so that the Monticello policy would cover sexual misconduct and therefore, the liability, if any, is outside the scope of the insurance provided by the Underwriters, and/or is excluded from coverage because of a "covered elsewhere" exclusion. In their second claim for relief, the Underwriters claim that there is not coverage, and therefore no duty to defend because: 1) Thompson was a cadet on the *Tole Mour*, not a "seaman," and 2) although Thompson labeled his claims as maritime claims, all of his claims are inextricably tied in with his claims of sexual assault so as to make none of the claims covered.

Marimed filed the instant Motion to Dismiss or, in the alternative, For a Stay, and an accompanying memorandum, on October 29, 1999. The Underwriters filed an opposition January 3, 2000. On January 7, 2000, Marimed filed its reply. The Court held a hearing on the instant motion on January 18, 2000.

## DISCUSSION

### I The Parties' Arguments

In the instant motion, Marimed argues that this Court should use its discretion and dismiss the Underwriters' declaratory relief action, or in the alternative, stay the action pending resolution of the Thompson suit.

Dismissal is sought on three grounds. First, Marimed argues that the declaratory relief action should be dismissed because it would require needless determination of multiple, significant state insurance law issues. Specifically, Marimed argues that the action would require this Court to decide: 1) whether providing defense and coverage for complicity in sexual assaults violates the public policy of Hawaii; 2) whether, under *Bayudan v. Tradewind Insurance Co.*, 957 P.2d 1061, 87 Hawai'i 379 (Haw.App.1998), a recent state insurance law case, "covered" claims are "inextricably tied" with uncovered claims that defeat coverage for all; 3) whether emotional distress and mental suffering are "personal injuries;" and 4) the effect of a "covered elsewhere" clause on an insurance policy. *See* Marimed Memo. in Sup. at 5–6; Marimed Reply at 5 n. 2. Marimed also argues that the Underwriters' claim that coverage is barred by the "covered elsewhere" clause can only be resolved by investigating the breadth of the Monticello coverage, which in turn requires the resolution of even more state insurance law questions. *See* Marimed Memo. in Sup. at 6. Marimed maintains that all of these state law issues predominate over the lone admiralty question of whether or not Thompson was a "cadet" or a "seaman."

Second, Marimed argues that if this Court allows the Underwriters to pursue a claim for declaratory relief, the result will be duplicative litigation of operative facts which are being resolved in various lawsuits in Hawaii state courts. Marimed claims that the questions of, 1) whether Thompson was a cadet or a seaman, 2) the nature of Thompson's injuries and Mar-

imed's complicity therein, and 3) Marimed's coverage under the Monticello policy, are all being posed in pending state court litigation. Marimed maintains that even if the issues in the Thompson suit and the Monticello coverage action are not identical to the issues in the instant request for declaratory relief, duplicativeness does not require identity of parties and issues, only that actions arise from the same factual circumstances and involve the same legal issues.

Third, Marimed argues that the claim for declaratory relief should be dismissed because the Underwriters are forum shopping, an activity to be discouraged.

Alternatively, Marimed argues that this Court should stay the declaratory relief action to avoid prejudice to itself in the underlying action. Marimed maintains that it will be prejudiced by the burden of fighting multiple lawsuits generally, and more specifically, because it may be forced to admit harmful facts to preserve coverage. Finally, it argues that there is a risk that a finding in the instant action could collaterally estop Marimed from defending itself in the Thompson claim.

In opposition to the instant motion, the Underwriters argue that there is no basis for this Court to dismiss or stay the action. The Underwriters argue first that the interpretation of marine P & I policies falls within the province of the federal courts and that indemnification results under such policies only if liability arises out of the insured's ownership of an insured vessel.

Second, the Underwriters argue that this action is not appropriate for abstention because it is not a "reactive declaratory relief action," and is distinguishable from Ninth Circuit precedent that favors abstention. They argue that state law issues will not be needlessly presented and that even if state law issues are presented, this should be no bar to this Court issuing a declaratory judgment. The Underwriters next refute any claim of forum shopping. They also maintain that there is no piecemeal litigation because the issues in the instant action are distinct from those in the Monticello coverage claim.

Third and finally, the Underwriters argue that there is no reason to grant Marimed a stay to avoid the burden of multiple litigation, both as a matter of law, and also because Marimed's Hawaii state court claim against Monticello shows that Marimed does not need to be shielded from coverage litigation during the Thompson suit.

## II This Court's Discretionary Jurisdiction Under the Declaratory Judgment Act

The instant action was filed pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201–02. It states, in relevant part, that:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

■ A lawsuit seeking federal declaratory relief must pass constitutional muster by presenting an actual case or controversy and must also fulfill statutory jurisdictional prerequisites. *See Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1222–23 (9th Cir.1998) (en banc). Additionally, entertaining the action must be "appropriate." *See id.* at 1223. Marimed does not dispute that an actual case or controversy is presented to the Court. The Court will now examine whether it has jurisdiction over the action and, if so, whether it would be appropriate for the Court to exercise that jurisdiction.

## A. Jurisdictional Basis of the Underwriters' Claims

■ Marimed does not dispute that the Underwriters have subject matter jurisdiction in this court. Nevertheless, the Court will examine the question sua sponte. "The Declaratory Judgment Act does not itself confer federal subject matter jurisdiction. There must be an independent basis for such jurisdiction." *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 753 (9th Cir.1996) (citations omitted), *overruled in part on other grounds by Dizol*, 133 F.3d at 1227.

The Underwriters state two jurisdictional bases: admiralty, 28 U.S.C. § 1333, and diversity, 28 U.S.C. § 1332. There is no dispute that there is complete diversity between the parties and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The Court will now examine the Underwriters' admiralty jurisdiction.

■ The Underwriters' complaint makes claims that create subject matter jurisdiction in admiralty. First, and generally, their claim requires the construction of a marine insurance contract. Disputes involving marine insurance contracts for vessels engaged in maritime commerce and navigation fall within admiralty jurisdiction. *See Simon v. Intercontinental Transport B.V.*, 882 F.2d 1435, 1441 (9th Cir.1989). Second, the Underwriters assert that Thompson's claims are really *not* maritime claims at all which would be covered by the policy. This assertion is based on the argument that Thompson is not a "seaman" entitled to maritime remedies such as Jones Act negligence, unseaworthiness, and maintenance and cure. Resolution of this question requires looking to federal maritime law on who is a seaman. *See, e.g., Delange v. Dutra Construction Co.*, 183 F.3d 916, 919 (9th Cir.1999) (defining "seaman" under Jones Act).

The Court finds that the Underwriters have both admiralty and diversity jurisdiction. It will now turn to the question of whether it is appropriate or not to exercise jurisdiction over the Underwriters' declaratory judgment action.

## B. Should this Court Exercise Its Jurisdiction over this Declaratory Judgment Action?

■ Noting the permissive, non-mandatory terms of the DJA, the Ninth Circuit held that the determination of the appropriateness of granting jurisdiction in a declaratory relief action based in diversity is within the discretion of the district court. *See Dizol*, 133 F.3d at 1223; *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (district court may use its discretion to stay or dismiss an action seeking a declaratory judgment). *Wilton* explicitly rejected the idea that a district court could only dismiss such actions in "exceptional circumstances," saying that "[d]istinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River*." *Id.* at 286, 115 S.Ct. 2137.

■ A district court is not required, sua sponte, to address the appropriateness of maintaining jurisdiction over a declaratory relief action; if a party raises the issue in the district court, however, the court must make a record of its reasoning for why it either accepts or declines jurisdiction. *See Dizol*, 133 F.3d at 1224–25. The district court's reasoning should focus on the following factors, taken from *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942): 1) avoiding needless determination of state law issues; 2) discouraging litigants from filing declaratory actions as a means of forum shopping, and 3) avoiding duplicative litigation. *See id.* at 1225. The Ninth Circuit also noted that the presence or absence of parallel state proceedings was an additional factor:

"If there are parallel state proceedings involving the same issues and parties

pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions. However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically."

*Id.* (citations and footnotes omitted). *See also Maui Land & Pineapple Co. v. Occidental Chem. Corp.*, 24 F.Supp.2d 1079, 1083 (D.Haw.1998) (Kay, C.J.) (laying out same four factors).

While *Dizol* and *Wilton* are instructive, it must be noted that they are not on all fours with the instant action. In both cases the jurisdictional basis was diversity; in the instant case, jurisdiction is based upon both diversity *and* admiralty. The problem is not that a claim filed in admiralty is inappropriate for determination under the Declaratory Judgment Act; there is no indication of that being an issue. *See, e.g., John Deere Ins. Co. v. Smith Lighterage Co.*, 948 F.Supp. 947, 948 (W.D.Wash.1996) (DJA case brought in admiralty); *see also Britamco Underwriters, Inc. v. Raymond E. Wallace Special Prods., Inc.*, 56 F.Supp.2d 542, 544 (E.D.Pa.1999) (DJA used to bring suit in admiralty regarding a marine liability insurance policy). Instead, the problem for this Court is that no clear standard exists for how a court should evaluate whether or not to exercise jurisdiction in a declaratory judgment action based in admiralty. In a similar case involving an insurer's declaratory relief request, the court noted the quandary, stating that whether or not to exercise discretion, "involves the uncertain line demarcating where the States' interest in regulating insurance stops and the federal interest in uniform admiralty decisions begins." *John Deere*, 948 F.Supp. at 948. Neither the Supreme Court nor the Ninth Circuit have determined the amount of discretion a district court possesses in

deciding whether to exercise jurisdiction in a declaratory judgment action when the court is sitting in admiralty. *See, e.g., Wilton*, 515 U.S. at 290, 115 S.Ct. 2137 (Court specifically noted that it was not "attempt[ing] at this time to delineate the outer boundaries of [a district court's] discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings."); *John Deere*, 948 F.Supp. at 949 (in DJA case brought under both diversity and admiralty, the court noted that, "The Ninth Circuit has not yet determined how much discretion a district court enjoys to abstain from declaratory judgment action when the court is sitting in admiralty."); *see also Sphere Drake Ins. PLC v. Fun Charters, Inc.*, No. CV–96–00667–HG, 1997 WL 1065503, at *5 (D.Haw. June 26, 1997) (Gillmor, J.), *aff'd*, 165 F.3d 918, No. 97–16387, 1998 WL 808014 (9th Cir. Nov.18, 1998) (action brought under both diversity and admiralty; the court noted the lack of a Ninth Circuit determination on the issue) (case cited by both parties in memoranda). Lacking a standard specifically for admiralty actions, the district courts in both *John Deere* and *Sphere Drake* applied the Ninth Circuit's criteria for determining whether to exercise jurisdiction in a declaratory judgment action filed in diversity. *See John Deere*, 948 F.Supp. at 949–50 (pre-*Dizol* case, but applied same three factors, plus a consideration of avoiding piecemeal litigation, to reach eventual decision to stay the litigation); *Sphere Drake*, 1997 WL 1065503, at *5 (after finding that there were no existing or anticipated state court proceedings, no evidence of forum shopping, and no objections to its exercise of jurisdiction, and that forcing the plaintiffs to re-file in state court would not promote judicial economy or avoid piecemeal litigation, the court exercised its discretionary jurisdiction).

Because Marimed raised the issue, under *Dizol* this Court must analyze whether or not it should exercise its discretionary jurisdiction over the instant action. Lacking alternative guidance, like *John Deere*

and *Sphere Drake,* this Court will use the Ninth Circuit's standards for whether or not to exercise jurisdiction over a declaratory judgment action filed in diversity. The Court now turns to this analysis:

### 1. Avoiding Needless Determination of State Law

■ "Disputes arising under marine insurance contracts are governed by federal admiralty law when an established federal rule addresses the issues raised." *Kiernan v. Zurich Cos.,* 150 F.3d 1120, 1121 (9th Cir.1998). Absent a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice, state law will control the interpretation of a maritime insurance policy. *See Bohemia Inc. v. Home Ins. Co.,* 725 F.2d 506, 510 (9th Cir.1984) (applying *Wilburn Boat,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)); *see also Port Lynch, Inc. v. New England Int'l Assurety of Am., Inc.,* 754 F.Supp. 816, 820, 822–25 (W.D.Wash.1991) (following *Bohemia,* district court determined that both judicially fashioned admiralty rules and a need for uniformity in admiralty practice existed and applied federal law instead of Washington law).

■ There is a judicially fashioned federal admiralty rule for maritime P & I policies, such as the one at issue in the instant case. The rule states that, "P & I provisions indemnify vessel owners only if their liability arises out of their ownership of an insured vessel." *See City and County of San Francisco v. Underwriters at Lloyds, London,* 141 F.3d 1371, 1372 (9th Cir.1998); *Bohemia,* 725 F.2d at 509. This rule was recognized initially in *Lanasse v. Travelers Ins. Co.,* 450 F.2d 580, 584 (5th Cir.1971) (P & I insurance did not cover claim where injury to crew member on boat was caused by negligence of crane operator on platform and not by any negligence of the vessel or its crew, despite fact that same party chartered boat and owned crane, because all the vessel offered was

the locale for the accident, and not a causal relationship to the injury). The Underwriters argue that Marimed's liability, if any, arises out of the professional services it was providing at the time of the alleged assaults, and not out of its ownership of the *Tole Mour. See* Complaint ¶ 21(c). The Underwriters argue that the only contribution of the vessel is the locale of the assaults. *See id.* Following *Kiernan,* because there is a federal rule on the issue, federal admiralty law would be used to decide whether or not Marimed's liability arises out of its ownership of the vessel (as opposed to its professional services). The instant dispute *could* therefore be resolved completely with federal admiralty law because if Marimed is found liable for Thompson's injuries, but this liability does not "arise out of Marimed's ownership of an insured vessel," then the Underwriters have a complete defense to coverage.

However, if the answer to this question is not in the Underwriters' favor, then evaluation of the Underwriters' other defenses to coverage would be made using state law. Although the Underwriters correctly argue that state law issues will not necessarily be reached, it is they who raised four state law based defenses to coverage in their complaint; they cannot now diminish the likelihood that analyzing state law will be required. Specifically, this Court would have to decide if sexual assaults are insurable within the public policy of Hawaii and if emotional distress and mental suffering constitute personal injuries. This Court might also have to decide if the Monticello coverage covers the Thompson claim (requiring the resolution of more state law questions), and if it does, whether the "covered elsewhere" clause in the policy with the Underwriters bars coverage. Finally, this Court might have to decide the implications of *Bayudan v. Tradewind Insurance Co.,* 957 P.2d 1061, 87 Hawai'i 379 (Haw.App.1998), a recent Hawaii insurance law case.[4]

---

4. *Bayudan* held that if some insurance claims do not raise the potential for coverage, and all of the factual allegations and injuries are "unquestionably implicated" (or "inextricably

tied" as the Underwriters say) in the uncovered claims, then the insurer does not have a duty to defend. *Bayudan,* 957 P.2d at 1062, 87 Hawai'i at 380.

This Court finds that, while it is not certain at this point that all of these state law questions would require resolution, the likelihood that state law issues will predominate is sufficient. The instant case is similar to *John Deere* where the insurance company plaintiff raised a mixture of state and federal issues in their request for declaratory relief. *See* 948 F.Supp. at 949. The court held that, "in circumstances where state law concerns predominate, as they do in the case at bar, staying the case pending resolution of the state law issues is appropriate." *Id.* Similarly, state law issues predominate here. This finding weighs towards this Court declining jurisdiction in this action.

### 2. Forum Shopping

The Underwriters deny any charge of forum shopping, stating that they simply prefer to have this case heard in federal court because of federal courts' familiarity with admiralty actions and marine insurance. On the one hand, between April of 1998 when the Thompson suit was filed, and September of 1999 when the Underwriters filed this action, Marimed never sought resolution of its coverage in state court, nor has it alleged that they intended to file such a case. The Court notes that perhaps no state court action was filed to resolve the issue because the Underwriters had already agreed to defend Marimed, albeit under a reservation of rights. There is some question forum shopping might have occurred, however. There are three related lawsuits pending in Hawaii state courts and it is likely that at some point the issue of the Underwriters' coverage would arise in at least one of them. By filing in this Court, the Underwriters could be trying to preempt state court action. For these reasons, the Court finds that this factor neither weighs for nor against declining jurisdiction.

### 3. Avoidance of Duplicative Litigation

The Court finds that avoidance of duplicative litigation favors this Court declining jurisdiction in this action. Should this court exercise its discretionary jurisdiction, it will very likely have to decide numerous questions of Hawaii insurance law. *See* subpart 1 *supra.* Many of these very same issues are issues to be decided in pending state court litigation. For example, whether Monticello must cover the Thompson suit is being litigated now between Marimed and Monticello. The Court is not persuaded by the Underwriter's argument that they are not asking this Court to determine the extent of Monticello's coverage obligations. *See* Plaintiff's Mem. in Sup. of Motion at 8. By asserting a defense to coverage that Marimed tailored its insurance so that Monticello would cover sexual misconduct, and therefore that the "covered elsewhere" clause in the Underwriters' policy precludes coverage, construing the Monticello claim is exactly what the Underwriters have asked this Court to do. *See* complaint at ¶ 21.d. Accordingly, the Court finds that avoidance of duplicative litigation favors declining jurisdiction in this action.

### 4. Presence of Parallel Proceedings

While state court proceedings are pending between Marimed and both Thompson and Monticello, there is no state court litigation about the coverage responsibilities of the Underwriters to Marimed. This does not mean that no parallel proceedings exist, however. For example, in *Golden Eagle,* a party contended that an underlying state action was not "parallel" because, much like the instant case, one of the parties was not involved and the issues were not the same in the state court action. *See Golden Eagle,* 103 F.3d at 754–55. The court held, however, that "[i]t is enough that the state proceedings arise from the same factual circumstances." *See id.* The flexibility of the "parallel" analysis is also evident in *Employers Reinsurance Corp. v. Karussos,* 65 F.3d 796 (9th Cir.1995). The *Karussos* court held that it had been an abuse of discretion for a district court to retain jurisdiction over an insurer's declaratory judgment coverage action in derogation of the general rule

to decline jurisdiction during the pendency of parallel state proceedings in which only state law questions are posed. *See id.* at 799–800. The court reached this holding when a state proceeding was going forth in which there were overlapping, although not completely identical, factual questions between the proceedings, and the insurer was not a party to the state court proceeding. *See id.* at 800. Additionally, this Court, in another insurance declaratory judgment action, found that the underlying liability suit in state court between the insured and a third party was parallel to the federal court coverage action between the insured and the insurer. *See Maui Land & Pineapple*, 24 F.Supp.2d at 1083. Here, the state court proceedings arise from the same factual circumstances, as in *Golden Eagle*. Also, similarly to *Karussos*, there are state court proceedings with overlapping questions and the fact that the Underwriters are not a party should be inconsequential. Finally, the relationship of the cases in *Maui Land & Pineapple* is exactly the relation of the cases here. For all of these reasons, the Court finds that parallel state court proceedings are pending.

Furthermore, even if the lack of a mirror-image state court proceeding meant that there was not a parallel proceeding, the Ninth Circuit in *Dizol* made clear that whether or not there is a parallel proceeding is merely one factor to be considered in addition to the three *Brillhart* factors when deciding whether to accept or decline jurisdiction. *See Dizol*, 133 F.3d at 1225. Finally, the Supreme Court has left this question untouched, and therefore open to the district courts and courts of appeals to decide. *See Wilton*, 515 U.S. 277, 290, 115 S.Ct. 2137, 132 L.Ed.2d 214 (leaving question of a court's discretion to not exercise jurisdiction open in "cases in which there are no parallel state proceedings.").

The Court finds that parallel proceedings are going forth in state court sufficiently in the Thompson suit and the Monticello coverage action. Alternatively, even if these lawsuits are not parallel proceedings, this Court finds that the lack of parallel proceedings is not dispositive and does not counsel against declining its jurisdiction. The Court therefore finds that this factor weighs for declining jurisdiction.

## III   Conclusion

■ The Court finds that the *Dizol* factors weigh in favor of Marimed. Accordingly, the Court will, in its discretion, decline to exercise its jurisdiction in this action at this time. However, the Court will not dismiss the instant action. Instead, it will grant a stay in the instant action pending determination of these issues in state court. It appears that either the Underwriters or Marimed could, and should, seek such a determination in state court.

■ The use of stays instead of dismissal has been approved by courts in this circuit upon finding the *Dizol* factors warrant declining jurisdiction. "A stay, rather than dismissal, is the preferred course of action," because it assures that federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy. *See John Deere*, 948 F.Supp. at 949 (citing *Wilton*, 515 U.S. at 288 n. 2, 115 S.Ct. 2137).

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Marimed's Motion to Dismiss and GRANTS Defendant Marimed's alternative Motion For a Stay.

IT IS SO ORDERED.