279 N.J. Super. 367 (1995)
652 A.2d 1236
A & S FUEL OIL COMPANY, INC., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
ROYAL INDEMNITY COMPANY, INC., (A/K/A ROYAL INSURANCE), DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND EMAR GROUP, INC., WALSH GROUP, INC., EMIL SOLOMINE, AN INDIVIDUAL AND GARY VICARO, AN INDIVIDUAL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1995.
Decided January 31, 1995.
*368 Before Judges GAULKIN, BAIME and KESTIN.
Stephen B. Fenster argued the cause for Royal Indemnity Company, Inc. (Gallo Geffner Fenster, attorneys; Mr. Fenster and Valerie A. Vladyka, on the brief).
Donald P. Fedderly argued the cause for A & S Fuel Oil Company, Inc.
Smith, Stratton, Wise, Heher & Brennan, attorneys for Insurance Environmental Litigation Association, amicus curiae.
The opinion of the court was delivered by GAULKIN, P.J.A.D.
While transporting a load of heating oil along Route 44 in Netcong, a fuel truck owned and operated by plaintiff A & S Fuel Oil Company, Inc. (A & S) developed a leak that ultimately spilled some 600 gallons of oil into the Musconetcong River. A & S was required to contain and remediate the spill, which it did at a cost *369 of approximately $75,000. A & S submitted a claim for indemnification to defendant Royal Indemnity Company, Inc., which insured A & S under a commercial automobile liability policy. Royal Indemnity disclaimed coverage and A & S filed this action. On cross-motions for summary judgment, a Law Division judge held that the policy covered the spill. He subsequently entered judgment against Royal Indemnity for $95,411.75, including prejudgment interest, and dismissed A & S's remaining claims. Royal Indemnity appeals from the judgment against it; A & S cross-appeals from the denial of its demand for counsel fees and from the dismissal of its claim for bad-faith denial of coverage.
The policy provided insurance for "property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." However, it excluded certain damage that Royal Insurance "will not cover," including:
9. Bodily injury or property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.
Royal Indemnity acknowledges that the loss resulted from a "sudden and accidental" discharge of a "pollutant." Under the quoted language, then, Royal Indemnity would be liable. But the policy incorporated a three-page endorsement, CA 00 25, bearing the following heading in large capital letters:
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
CHANGES IN BUSINESS AUTO AND TRUCKERS POLICIES-MOBILE EQUIPMENT, CONTRACTUAL LIABILITY AND POLLUTION.
Among the provisions of the endorsement is the following:
B. CHANGES IN LIABILITY INSURANCE WE WILL NOT COVER  EXCLUSIONS is changed as follows:
* * * * * * * *
5. The exclusion relating to the dumping, discharge or escape of irritants, pollutants or contaminants is changed to read:
This insurance does not apply to:

*370 a. Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
(1) That are or that are contained in any property that is:
(a) Being transported or towed by, or handled for movement into, onto or from, the covered auto.
(b) Otherwise in the course of transit; or
(c) Being stored, disposed of, treated or processed in or upon the covered auto;
(2) Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the covered auto; or
(3) After the pollutants or any property in which the pollutants are contained are moved from the covered auto to the place where they are finally delivered, disposed of or abandoned by the insured.
A & S acknowledges that the fuel spill constituted "property damage arising out of the actual ... discharge, dispersal, release or escape" of a "pollutant." A & S argues that it nevertheless had coverage because (1) the endorsement changes the "WE WILL NOT COVER  EXCLUSIONS" provision of the policy, (2) the policy coverage for "sudden and accidental" spills is not an "exclusion" but is an exception to an exclusion and (3) that exception accordingly survives as an exception to the exclusion described in the endorsement.
The motion judge adopted that reasoning. He acknowledged that the broad exclusionary language of the endorsement "is at some variance from that in the original [policy]." However, the endorsement "doesn't say anything about the sudden and accidental." Because of that perceived gap and "the philosophy of our courts that [an] ... insurance contract should be construed more strictly against the person who drafted it," the judge held that A & S was entitled to coverage.
We reject that analysis. The endorsement states that the exclusions provision of the policy "is changed as follows:" and that the exclusion specifically relating to the dumping, discharge or escape of pollutants "is changed to read: ...." The reasonable and, in our view, unavoidable interpretation is that the endorsement replaced, in its entirety, the policy's pollution exclusion, *371 including its "sudden and accidental" limitation. A contrary reading is, of course, conceivable: A & S has conceived one. Our case law, however, does not require that we credit every conceivable deconstruction of contractual language. As Justice Clifford said in Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979), the "doctrine of ambiguity" should be invoked only to resolve "genuine" ambiguities, not "artificial" ambiguities created by "semantical ingenuity." Id. at 246-47, 405 A.2d 788.
There can be no doubt  indeed, we do not understand A & S to dispute  that the endorsement was designed to assure an absolute pollution exclusion, and that the language of the endorsement unambiguously states such an absolute exclusion. Volumes of caselaw from around the country so hold. See, e.g., U.S. Bronze v. Commerce & Industry Ins. Co., 259 N.J. Super. 109, 117-18, 611 A.2d 667 (Law Div. 1992); Vantage Development Corp., Inc. v. American Environment Technologies Corp., 251 N.J. Super. 516, 524-30, 598 A.2d 948 (Law Div. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 120-22 (2nd Cir.1990); Union Mutual Fire Ins. Co. v. Hatch, 835 F. Supp. 59, 63-65 (D.N.H. 1993); LaSalle National Trust v. Schaffner, 818 F. Supp. 1161, 1167-68 (N.D.Ill. 1993); Alcolac Inc. v. California Union Ins. Co., 716 F. Supp. 1546, 1549 (D.Md. 1989); Guilford Industries, Inc. v. Liberty Mutual Ins. Co., 688 F. Supp. 792, 794 (D.Me. 1988), aff'd, 879 F.2d 853 (1st Cir.1989); Budofsky v. Hartford Insurance Co., 147 Misc.2d 691, 556 N.Y.S.2d 438, 440-41 (N.Y.Sup. 1990); Appleman, Insurance Law and Practice (Berdal ed.), § 4525 (1993); G. Kenny, F. Lattal, N.J. Insurance Law § 9.39, at 343-44 (1993). The only ambiguity proffered by A & S is the endorsement's failure to state that it replaces the policy exclusion "in its entirety" or that the "sudden and accidental" exception is no longer in effect. Hindsight can always suggest language that might have resolved a purported ambiguity. But the absence of such language does not prove a genuine ambiguity. As other courts have found, the endorsement's absolute and unlimited pollution exclusion must fairly and reasonably be read as eliminating any policy *372 coverage for sudden and accidental discharge. See Stack Oil, 922 F.2d at 122; Budofsky, 556 N.Y.S.2d at 440-41.[1]
That determination moots A & S's challenges to the denial of its demand for counsel fees and to the dismissal of its claim for bad faith denial of coverage. The judgment against Royal Indemnity is reversed; the August 5, 1993 order for judgment is otherwise affirmed.
NOTES
[1] We recognize that the reported cases all involve comprehensive general liability policies, while here we interpret a motor vehicle policy. Although it might be argued that a motor vehicle policy generates broader expectations in the policyholder, we see no reason or basis to interpret an attached pollution endorsement any differently.