

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2009

# Royal Ins Co of Amer v. KSI Trading Corp

Precedential or Non-Precedential: Precedential

Docket No. 06-3447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Royal Ins Co of Amer v. KSI Trading Corp" (2009). *2009 Decisions.* Paper 1442.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1442

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 06-3447 and 07-3824

———

ROYAL INSURANCE COMPANY OF AMERICA

v.

KSI TRADING CORPORATION;
ASTRO AUTOMOTIVE, INC.

JAMES BARRETT; JEFFREY JOINER;
THE LIG INSURANCE AGENCIES,

Third-Party Defendants


KSI Trading Corporation; Astro Automotive, Inc.,
James Barrett, Jeffrey Joiner,
The LIG Insurance Agencies,

Appellants, No. 06-3447

KSI Trading Corporation; Astro Automotive, Inc.,
The LIG Insurance Agencies,

Appellants, No. 07-3824

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-00867)
District Judge:  Honorable Dennis M. Cavanaugh

Argued January 6, 2009
Before:  FUENTES and FISHER, *Circuit Judges*,
and PADOVA,* *District Judge*

(Filed: April 16, 2009)

Kenneth R. Rothschild (Argued)
Golden, Rothschild, Spagnola,
 Lundell, Levitt & Boylan
1011 Route 22 West, Suite 300
P.O. Box 6881
Bridgewater, NJ  08807
        *Attorney for Appellants*

James F. Campise
David Y. Loh (Argued)
Cozen & O'Connor
45 Broadway Atrium, Suite 1600
New York, NY 10006
        *Attorneys for Appellee*

_____

*Honorable John R. Padova, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

This appeal calls for the interpretation of a Marine Open Cargo insurance policy (the Policy) entered into by KSI Trading Corporation (KSI) and Royal Insurance Company of America (Royal). A fire occurred at one of KSI's warehouses, and KSI filed a reimbursement claim with Royal for the full extent of its loss pursuant to a Warehouse Storage Insurance section of the Policy. Royal disclaimed coverage for a significant portion of the loss, asserting that the Warehouse Storage Insurance section did not cover KSI's domestically acquired merchandise. Thereafter, Royal sought a declaratory judgment in the District Court that it was not obligated to indemnify KSI for all of its loss. The District Court determined that the Warehouse Storage Insurance section of the Policy only provided coverage for KSI's internationally acquired merchandise and granted summary judgment in favor of Royal. We conclude that the Policy is ambiguous with respect to the property that was insured while stored in KSI's warehouse, and because New Jersey law, which governs the interpretation of the Policy, requires ambiguities to be resolved in favor of the insured, we will reverse the District Court and enter judgment in favor of KSI.

3

I.

KSI, a New Jersey corporation, is a wholesale distributor of after-market auto body parts that purchases inventory from both domestic and international suppliers, and stores its inventory in warehouses located throughout the United States. Royal, an Illinois corporation, is a marine cargo underwriter which provides insurance for the hazards encountered in maritime transportation. On May 19, 1999, Royal provided quotations for insurance coverage to KSI's broker, Jeffrey Joiner of the LIG Insurance Agencies (LIG), and on July 1, 1999, Royal and KSI entered into an insurance contract, with coverage commencing at this time. Certain subsidiaries of KSI, including Astro Automotive, Inc. (Astro), were also covered by the Policy. Sometime after July 1, 1999, KSI received the actual Marine Open Cargo Policy No. POC102991.

The Policy contained three sections, which are titled as follows: (I) Ocean Cargo; (II) Domestic Transportation Insurance; and (III) Warehouse Storage Insurance. The Ocean Cargo section of the Policy is comprised of fifty-one paragraphs, but in one particularly relevant paragraph, entitled "Property Insured & Insurable Interest," states:

> "This Policy covers, for account of whom it may concern, shipments of lawful goods and merchandise consisting principally of:

> MERCHANDISE INCIDENTAL TO THE ASSURED'S

4

BUSINESS, CONSISTING
PRINCIPALLY OF
AUTOMOBILE PARTS

Under or on deck, consigned to or shipped by others for account or control of the Assured or in which the Assured has the risk of loss, but excluding shipments either sold or purchased by the Assured subject to the terms of sale (or purchase) whereby the Assured is not obligated to furnish Ocean Marine insurance. Notwithstanding the foregoing, this Policy also covers all shipments of lawful goods and merchandise for the account of others from whom the Assured has received written instructions to insure provided such instructions are received prior to any known or reported loss, damage, or accident and prior to sailing of the vessel."

In another particularly relevant paragraph, with the caption "Geographical Limits," the Ocean Cargo section also states:

"Always excepting adventures which are illegal under the laws of the United States this Policy covers Property Insured at and from ports and/or places in the world to ports and/or places in the world excluding shipments originating in the United States (meaning the forty-eight (48) contiguous states and the District of Columbia) or Canada for shipment to destination[s] in the Continental United States or Canada."

Turning to Sections II and III of the Policy, the Domestic Transportation Insurance section states, in pertinent part:

> "Effective as to all shipments made on or after July 1, 1999 this Policy is hereby extended, subject to its terms and conditions, to cover shipments of the Property Insured while in due course of transit only at the risk of the assured WORLDWIDE excluding the former Soviet Union and Russian Federation from the time the property leaves the store, warehouse, or factory at initial point of shipment and continuously thereafter, including while on docks, wharves, piers, bulkheads, depots, stations or platforms; until delivered at store, warehouse or factory at destination."

Lastly, the Warehouse Storage Insurance section states, in relevant part:

> "It is understood and agreed that, subject to all terms and conditions which do not conflict with the provisions set forth herein, this Policy is extended to cover property insured under Section I which is the property of the Assured or the property of others from whom the Assured has written instructions to insure while temporarily

stored in warehouses at locations listed in the attached Schedule."[1]

Additionally, Sections II and III both provide that "[n]othing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, declarations or agreements of the Policy other than as expressly stated in this Coverage Section." The Policy renewed automatically on an annual basis.

On April 1, 2003, a fire occurred at KSI's warehouse in Franklin, Massachusetts resulting in a significant loss of KSI's inventory.[2] At that time, Astro was a leasehold tenant of the Franklin warehouse and was using it to store inventory. KSI submitted a claim to Royal for its loss of inventory pursuant to the Warehouse Storage Insurance section of the Policy. KSI claimed that the inventory destroyed or ruined by the fire was in excess of the $2.5 million limit scheduled for the Franklin warehouse. On March 9, 2004, in a written notice, Royal disclaimed coverage for the portion of the loss attributable to KSI's domestically acquired merchandise. Instead, Royal agreed to reimburse KSI in the amount of $768,766.10 – which was Royal's estimate of the net value of the internationally

---

[1]The Schedule listed eleven locations by name and also provided coverage for unnamed locations within the continental United States. Among the expressly named locations was a warehouse in Franklin, Massachusetts. The amount of coverage for this warehouse was limited to $2.5 million.

[2]Subsequent to the fire, the parties cancelled the Policy, effective July 1, 2003.

7

acquired merchandise that was lost in the fire – minus salvage and a $5,000 deductible. KSI maintained that it was entitled to reimbursement from Royal for the full extent of its loss, up to the Policy's $2.5 million limit.

On February 24, 2004, Royal filed a Complaint in the District Court seeking a declaratory judgment against KSI and Astro (collectively KSI) with respect to its indemnification obligations. KSI filed an Answer in which it asserted counterclaims against Royal for breach of contract, fraud, unjust enrichment, and bad faith. KSI also filed a Third Party Complaint against LIG, Joiner, and one other named individual (collectively LIG). Subsequently, KSI filed an Amended Answer and Amended Counterclaims, which included counterclaims for breach of the implied covenant of good faith and fair dealing, reformation based on fraud, and reformation based upon mutual mistake.

On June 13, 2005, Royal filed a motion for summary judgment against KSI seeking a declaration that the Warehouse Storage Insurance section of the Policy only covered goods that originated overseas and did not cover goods that originated domestically. KSI cross-moved against Royal for summary judgment on its counterclaim for breach of contract on the ground that no genuine issue of material fact existed with respect to Royal's obligation to reimburse KSI for all of the loss it incurred as a result of the warehouse fire (up to the Policy limits).

On February 17, 2006, the District Court granted summary judgment in favor of Royal and denied it as to KSI, finding that the Policy only provided warehouse coverage for

internationally acquired merchandise. Consequently, the District Court found that, under the plain language of the Policy, Royal had no obligation to indemnify KSI for the loss of its domestically acquired merchandise that resulted from the warehouse fire. The District Court also dismissed KSI's claims for breach of contract.

As a result of clerical error, the case was listed as "terminated" on the District Court's docket; however, because KSI's counterclaims for reformation were not the subject of any party's motion for summary judgment, KSI and LIG filed a motion to reinstate the counterclaims. On June 19, 2006, the District Court amended its Decision and Order to clarify that the reformation counterclaims remained viable. Subsequently, Royal moved for summary judgment on these two remaining counterclaims, and KSI filed an opposition to the motion. On August 22, 2007, the District Court granted Royal's motion for summary judgment and entered its order the next day, thus rendering a final judgment.

KSI timely appealed from the District Court's Decision and Order of February 17, 2006, as amended by the Decision and Order of June 19, 2006, and from the District Court's Decision and Order entered August 23, 2007.[3]

## II.

---

[3]Although LIG joined in the Notice of Appeal, according to KSI and LIG, on October 5, 2007, after the notice was filed, they stipulated to a discontinuance of KSI's third-party action against LIG.

The District Court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 515 (3d Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In making this determination, we must consider the evidence in the record in a light most favorable to the nonmoving party." *Pittston Co. Ultramar Am. Ltd.*, 124 F.3d at 515 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We exercise "plenary review over a district court's interpretation of state law, as well as its conclusion as to the legal operation of an insurance policy." *Id.* (internal citation omitted). Determining whether ambiguity exists in an insurance policy is a question of law subject to plenary review. *Id.* at 520.

## III.

The central issue on appeal is whether the Marine Open Cargo insurance policy, issued to KSI by Royal, covered KSI's domestically acquired merchandise while it was stored in KSI's Franklin warehouse. As an initial matter, maritime contracts are governed by federal admiralty law when there is an established federal rule, but absent such a rule, state law applies. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313-14, 321 (1955); *see also Pittston Co. v. Allianz Ins. Co.*, 795 F. Supp. 678, 689 n.10 (D.N.J. 1992) ("[I]n the absence of a controlling federal statute or an established rule of general maritime law, state law governs the scope and validity of contracts of marine insurance."). Because there is no applicable federal rule

10

governing the construction of the Policy at issue in the present case, state law applies, and the parties do not dispute that New Jersey law is the relevant body of law for this purpose.

Under New Jersey law, an insurance policy "'is simply a contract and its provisions should, of course, be construed as in any other contract.'" *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d Cir. 1992) (quoting *Caruso v. John Hancock Mut. Life Ins. Co.*, 57 A.2d 359, 360 (N.J. 1948)). As is the case with other types of contracts, an insurance policy "is to be governed by its own terms without recourse to other documents unless its own language so requires." *Herbert L. Farkas Co. v. N.Y. Fire Ins. Co.*, 76 A.2d 895, 897 (N.J. 1950). In the absence of any ambiguity, the terms of an insurance policy should "be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001); *see Bd. of Ed. of Florham Park v. Utica Mut. Ins. Co.*, 798 A.2d 605, 610 (N.J. 2002) ("In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." (internal quotation marks omitted)); *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960) ("When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties.").

Ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979). New Jersey caselaw "does not require that we credit every conceivable deconstruction of contractual language," but rather instructs that "the 'doctrine of ambiguity' should be invoked only to resolve 'genuine'

11

ambiguities, not 'artificial' ambiguities created by 'semantical ingenuity.'" *A & S Fuel Oil Co. v. Royal Indem. Co.*, 652 A.2d 1236, 1237-38 (N.J. Super. Ct. App. Div. 1995) (quoting *Weedo*, 405 A.2d at 795). Determining whether genuine ambiguity is present in an insurance policy requires interpreting the policy "as a whole, by giving a reasonable meaning to its form and cast." *Arrow Indus. Carriers, Inc. v. Continental Ins. Co. of N.J.*, 556 A.2d 1310, 1314 (N.J. Super. Ct. App. Div. 1989).

Where genuine ambiguity exists, such that "the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied." *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switz.*, 170 A.2d 800, 803 (N.J. 1961); *see Customized Distribution Servs. v. Zurich Ins. Co.*, 862 A.2d 560, 564 (N.J. Super. Ct. App. Div. 2004) ("[I]f an insurance policy's terms are capable of supporting two distinct outcomes as to whether there is coverage, the subject language must be interpreted in favor of the insured."). In an effort to avoid subjecting insureds "to technical encumbrances or to hidden pitfalls . . . policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow." *Meier v. N.J. Life Ins. Co.*, 503 A.2d 862, 870 (N.J. 1986) (internal quotation marks omitted). Moreover, when the issue of ambiguity arises from an "exclusion or exception, designed to limit the protection, a strict interpretation is applied." *Mazzilli*, 170 A.2d at 804.

Therefore, if the insurance policy's language is "insufficiently clear to justify depriving the insured of her reasonable expectation that coverage would be provided," the policy must be interpreted in favor of the insured. *Sparks v. St.*

12

*Paul Ins. Co.*, 495 A.2d 406, 413 (N.J. 1985); *see Zacarias*, 775 A.2d at 1264 ("When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured."). The rationale underlying the principle (referred to as *contra proferentem*) that ambiguities in insurance contracts should be resolved in favor of the insured "is that because most insurance agreements are drafted by the insurance industry, they are essentially contracts of adhesion." *Pittston Co. Ultramar Am. Ltd.*, 124 F.3d at 520 (citing *Meier*, 503 A.2d at 869). This rationale has less force when it is applied to "a sophisticated insured" who has participated in the drafting process. *Id.* at 521 (citing *Owens-Illinois, Inc. v. United Ins. Co.*, 650 A.2d 974, 991 (N.J. 1994)).

Against this backdrop, KSI argues that the Policy provided warehouse coverage for "property insured," which, as defined in Section I of the Policy, means "merchandise incidental to the assured's business, consisting principally of automobile parts," and by its terms included all of KSI's merchandise, regardless of its origin. In the alternative, KSI contends that the Policy should be reformed under equitable principles. In contrast, Royal argues that Section I of the Policy only provided coverage for the transportation of international cargo because, in addition to the language cited by KSI, Section I contains a paragraph on geographical limitations which excludes from coverage any merchandise that originated and remained in the United States or Canada. Confronted with these conflicting interpretations, we begin our own analysis with the plain language of the Policy's terms to determine if a genuine ambiguity exists. *See A & S Fuel Oil Co.*, 652 A.2d at 1237.

13

Paragraph 1 of the Warehouse Storage Insurance section states:

> "It is understood and agreed that, subject to all terms and conditions which do not conflict with the provisions set forth herein, this Policy is extended to cover property insured under Section I . . . while temporarily stored in warehouses at locations listed in the attached Schedule."

This section of the Policy does not independently identify the property to which it extends insurance coverage, but it does provide a cross-reference to Section I. Thus, in order to understand which property is insured while temporarily stored in KSI warehouses, we are directed to look to the Ocean Cargo section of the Policy.

Turning to this section, although the term "property insured" is never clearly defined, paragraph 3, which is captioned "Property Insured & Insurable Interest," certainly suggests a definition for this term when it states:

> "This Policy covers, for account of whom it may concern, shipments of lawful goods and merchandise consisting principally of:
>
>> MERCHANDISE INCIDENTAL TO THE ASSURED'S BUSINESS, CONSISTING PRINCIPALLY OF AUTOMOBILE PARTS

14

Under or on deck, consigned to or shipped by others for account or control of the Assured in which the Assured has the risk of loss, but excluding shipments either sold or purchased by the Assured subject to the terms of sale (or purchase) whereby the Assured is not obligated to furnish Ocean Marine insurance. . . ."

Notwithstanding the fact that the words "property insured" are never used in this passage, the use of all capital letters and offsetting text, coupled with the caption "Property Insured and Insurable Interest," is a strong indication that "property insured" is best understood to mean "merchandise incidental to the assured's business, consisting principally of automobile parts."

Accepting this as the most plausible definition of "property insured" and applying it to Section III would result in finding that any and all of KSI's merchandise (consisting principally of automobile parts) was insured while temporarily stored in one of KSI's warehouses, regardless of whether this property originated in the United States or overseas. Under this interpretation, the losses to domestic inventory which KSI incurred during the Franklin warehouse fire would have been covered by the Policy and Royal would be obligated to indemnify KSI (up to the limits set forth in the Policy) for these losses.

However, the wording of the Warehouse Storage Insurance section does not clearly indicate whether we are looking for a definition of "property insured" in Section I or whether we are looking to determine the scope of the property that is insured under Section I. If the latter is the proper inquiry,

15

our analysis is quite different, because even within paragraph 3 of Section I, which contains the purported definition of "property insured," we are able to locate language that narrows the scope of the property covered by this section. For example, paragraph 3 begins by stating that the "Policy covers . . . *shipments* of lawful goods and merchandise," and thereby suggests that only property in transit is insured under the Policy. Paragraph 3 also refers to merchandise that is "[u]nder or on deck," suggesting that the property insured under Section I of the Policy is further limited to marine cargo transported by sea.

Moreover, paragraph 5 of Section I suggests additional limitations on the scope of the property that is insured. Specifically, it states: "[T]his Policy covers Property Insured at and from ports and/or places in the world to ports and/or places in the world excluding shipments originating in the [Continental] United States . . . or Canada for shipment to destination[s] in the Continental United States or Canada." By its terms, this paragraph indicates that the property covered under Section I of the Policy is limited to merchandise that traveled overseas. Transferring this understanding of the property that is insured under Section I into Section III suggests that coverage does not extend to domestically acquired merchandise that is temporarily stored in a KSI warehouse. Consequently, Royal would not be obligated to reimburse KSI for the losses it suffered to its domestic inventory.

As this analysis of the plain language demonstrates, the Policy is "capable of supporting two distinct outcomes as to whether there is coverage," *Customized Distribution Servs.*, 862 A.2d at 564, and therefore indicates that a genuine ambiguity exists. Nonetheless, because we are instructed to "give effect to

16

the whole policy, not just one part of it," *Arrow Indus. Carriers, Inc.*, 556 A.2d at 1315, we will also consider the Domestic Transportation Insurance section, which constitutes the remainder of the Policy. Although this section refers to "Property Insured," it does not contain a definition for this term, thus suggesting that the meaning must be located elsewhere in the Policy. But if "property insured" is limited to imported inventory by operation of paragraph 5 of Section I, this would severely undermine Section II of the Policy, which expressly provides coverage to KSI's inventory during domestic transport. Although not inconceivable that the Domestic Transportation Insurance section only covered international merchandise, this more limited definition of "property insured" produces an odd result in the context of this section and seems unlikely to accurately reflect the intended scope of coverage. At the very least, a review of Section II does not help to clarify what "property insured" means or whether domestic merchandise was covered while temporarily stored in KSI's warehouses.

Therefore, after reviewing the plain language of the entire Policy, our confusion regarding the boundaries of coverage remains, and we are compelled to conclude that the Policy contains a genuine ambiguity as to whether domestically acquired merchandise was insured while temporarily stored in KSI's warehouses. *See Weedo*, 405 A.2d at 795 ("We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage."). As a result of this genuine ambiguity, we must construe the Policy "liberally in [the insured's] favor to the end that coverage is afforded to the full extent that any fair interpretation will allow." *Meier*, 503 A.2d at 870 (internal quotation marks omitted). Our analysis of the

17

Policy resulted in two plausible interpretations of the scope of warehouse coverage – either all of KSI's merchandise, regardless of geographical origin, was insured while temporarily stored in warehouses based on the unrestricted definition of "property insured" located in paragraph 3 of Section I, or only KSI's merchandise which was transported overseas, as opposed to solely within the United States and Canada, was insured while temporarily stored in warehouses based on the geographical limitations contained in paragraph 5 of Section I and other limiting language within the section.

Because both of these interpretations represent a fair reading of the terms of the Policy, New Jersey law requires that we adopt the more liberal construction and err in favor of finding coverage for the insured. *See Mazzilli*, 170 A.2d at 803; *Meier*, 503 A.2d at 870. Although the rationale for applying the principle of *contra proferentem* and construing ambiguities in favor of the insured may be less persuasive because KSI is a corporate entity and was represented by an insurance broker who made arrangements with Royal for the insurance coverage, neither KSI nor LIG actually participated in drafting the Policy, and therefore New Jersey law still calls for us to interpret the Policy so as to resolve ambiguities in favor of the insured. *See Pittston Co. Ultramar Am. Ltd.*, 124 F.3d at 521. Accordingly, we conclude that the Policy should be construed to provide coverage to KSI for all of its inventory, whether of domestic or international origin, while it was temporarily stored in KSI's Franklin warehouse.

Our decision to adopt this more liberal reading of the Policy is further reinforced by KSI's reasonable expectations of coverage. When genuine ambiguity exists, New Jersey law

18

permits courts to consider objective indicia of the insured's reasonable expectations in order to resolve the ambiguity in favor of the insured. *See Zacarias*, 775 A.2d at 1264 ("When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured . . . ."); *see also Pittston Co. Ultramar Am. Ltd.*, 124 F.3d at 523 (explaining that consideration of extrinsic evidence is appropriate to the extent that it "provides objective indicia" of the meaning of the terms of the insurance policy "from the linguistic reference point of the parties" (internal quotation marks omitted)).

We find that the method for calculating KSI's premium – which was based on KSI's total annual sales, as opposed to being derived from sales of its international merchandise alone – is a strong, objective indication that KSI understood the terms of the Policy to cover all of its merchandise and reasonably expected this coverage. Additionally, the initial quotation of warehouse coverage that Royal provided to KSI, which did not contain any restricting language regarding the origins of the property that would be insured, is another objective indication that KSI reasonably expected the Policy's coverage to extend to both its domestic and internationally acquired merchandise.

Because we conclude that the Policy is ambiguous and that a fair interpretation of its terms, when construed in favor of the insured, warrants finding that all of KSI's merchandise, regardless of its origin, was insured while temporarily stored in KSI's Franklin warehouse, we need not reach KSI's alternative reformation of contract arguments.

19

## IV.

In light of the ambiguity created by the express terms of the Policy, we must adopt an interpretation that provides coverage to KSI to the full extent that a fair reading will allow. In doing so, we conclude that the Warehouse Storage Insurance section of the Policy covers all of KSI's inventory, regardless of where that property originated, and we hold that KSI is entitled to indemnification for all of the loss it suffered in the Franklin warehouse fire, up to the monetary limits set forth in the Policy. Therefore, we will reverse the District Court's orders and enter judgment in favor of KSI.