**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 21-1420 & 21-2339

_____

*STEVANNA TOWING, INC.
FRANK BRYAN, INC.; GEORGETOWN SAND & GRAVEL, INC.;
M/V TIMOTHY JAMES (Intervenors in D.C.),
Appellants

v.

ATLANTIC SPECIALITY INSURANCE COMPANY

*Dismissed Pursuant to Court Order dated 08/19/22

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-15-cv-01419)
District Judge: Honorable David S. Cercone (No. 21-1420)
Magistrate Judge: Honorable Cynthia R. Eddy (No. 21-2339)

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 30, 2022

_____

Before: JORDAN, PORTER, and PHIPPS, *Circuit Judges*.

(Filed: October 21, 2022)

_____

OPINION**

_____

---

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, Circuit Judge.

These consolidated appeals concern an insurance coverage dispute arising after a towboat collided with a barge on the Ohio River. That crash caused a deckhand on the towboat to fall into the empty barge. To recover for his on-the-job injuries, the deckhand sued his employer, a maritime towing company with three personal-injury insurance policies. The deckhand also sued the owner of the boat and the boat itself, and the employer filed a third-party complaint against the preexisting charterer of the boat. Those claims proceeded in a different case, which ultimately settled. The employer's insurance company believed that the deckhand's claims were not covered by any of the policies, and on that basis, it did not indemnify the employer or any of the entities who claimed to be additional insureds for the costs of defending and settling the deckhand's case.

In this case, the four defendants from the deckhand's suit have challenged that denial-of-coverage decision. Those four entities brought claims for breach of contract, bad-faith denial, and declaratory judgment. The parties cross-moved for summary judgment, and the District Court entered judgment for the insurance company. The four claimants appealed. While on appeal, the employer and the insurance company settled their dispute.

On *de novo* review of the summary judgment record, the District Court correctly determined that the three remaining claimants cannot recover under the employer's insurance policies. For that reason, we will affirm the District Court's final judgment.

2

# I. FACTUAL BACKGROUND

## A. Stevanna's Insurance Policies

Stevanna Towing, Inc. operates towboats. It is incorporated in Pennsylvania and has its principal place of business in Beaver Falls, Pennsylvania. In 2014, it had three maritime insurance policies with Atlantic Specialty Insurance Company: a protection and indemnity ('P&I') policy, a marine general liability ('MGL') policy, and an excess liability policy. Atlantic Specialty is a New York corporation that has its principal place of business in Atlanta, Georgia.

The P&I policy requires Atlantic Specialty to indemnify Stevanna for personal-injury claims as well as for the reasonable costs of investigating and defending those claims. The P&I policy covers only injuries that occur while Stevanna is acting "as owner of the Vessel." P&I Policy at 2 (Mar. 10, 2014) (JA101). Although the policy's schedule of vessels lists only two boats – the *Savanna Ellise* and the *John Kushner* – the P&I policy also has an automatic-acquisition clause. That clause automatically extends coverage under the P&I policy to other vessels that Stevanna acquired, purchased, or chartered:

> Subject to the terms, conditions and limits of liability of [the P&I] policy, . . . th[e] policy covers automatically each vessel acquired, purchased, or chartered by [Stevanna].

P&I Policy, Endorsement No. 4 (Mar. 10, 2014) (JA108).

Stevanna also operated another towboat, the *Timothy James*, which is not specifically mentioned in the P&I policy. That boat was owned by Frank Bryan, Inc., a Pennsylvania corporation with a principal place of business in McKees Rocks, Pennsylvania. Frank Bryan chartered the boat to a wholly owned subsidiary, Georgetown

3

Sand & Gravel, Inc., which is a Pennsylvania corporation with a principal place of business in Georgetown, Pennsylvania.

Relevant to the automatic-acquisition clause, Stevanna, Frank Bryan, and Georgetown Sand & Gravel reached an oral agreement for the use of the *Timothy James*. Under that agreement, Stevanna would use the *Timothy James* to move barges for Frank Bryan and Georgetown Sand & Gravel, and when Stevanna was not doing so, it could use the towboat for its own purposes. The agreement could be revoked at will by any party at any time. Though Atlantic Specialty disputes the agreement's terms, Stevanna, Frank Bryan, and Georgetown Sand & Gravel have argued that their oral understanding included the same terms as those in a written charter that they had entered into for another vessel, the *John Kushner*. In the *John Kushner* charter, Stevanna promised to defend and indemnify Frank Bryan, its affiliates, and the vessel for any claims for personal injury that were "caused in whole or in part by the negligence of Stevanna, its agents and employees." Bareboat Charter Agreement for the *John Kushner* at ¶ 10 (July 15, 2014) (JA320).

Another of Stevanna's policies, its MGL policy, insures Stevanna against claims of bodily injury and property damage. That policy requires Atlantic Specialty to defend Stevanna and pay its legal obligations for such claims. But the policy contains an employer-liability exclusion, which denies coverage for an employee's bodily injury when it "aris[es] out of and in the course of" the employee's job. MGL Policy at 2 (Mar. 10, 2014) (JA136). That exclusion is not absolute, and the MGL policy insures Stevanna for an employee's injury if Stevanna has "assumed" liability for that injury "under an 'insured contract.'" *Id.* The MGL policy recognizes that Stevanna may form

4

an insured contract by "assum[ing] the tort liability of another party," by agreeing "to pay for 'bodily injury' . . . to a third person." *Id.* at 9 (JA143).

Stevanna's excess liability policy is aptly named. It increases the coverage limits for the P&I and MGL policies.

## B. The Personal Injuries Prompting the Coverage Dispute

In 2014, the *Timothy James*, operated by employees from Stevanna and Georgetown Sand & Gravel, bumped into a barge. That impact caused one of Stevanna's employees, a deckhand on the *Timothy James*, Raymond Robinson, who was removing a line from the barge, to lose his balance and fall into an empty barge hopper. Robinson blamed the injuries that he sustained from that fall on the boat's pilot, whom Robinson believed was negligent for failing to warn him of the impact.

On a theory of vicarious liability, Robinson sued Stevanna, Frank Bryan (the boat's owner), and the *Timothy James* to recover for his injuries. Stevanna filed a third-party complaint against Georgetown Sand & Gravel (the boat's preexisting charterer). Robinson settled that suit with each defendant.

Although it resolved Robinson's grievance, that settlement prompted another dispute. Stevanna requested reimbursement from Atlantic Specialty for the costs that it incurred to defend and settle Robinson's case. But Atlantic Specialty declined coverage because the *Timothy James* is not listed in the P&I policy's schedule of covered vessels. In denying coverage, Atlantic Specialty did not consider the applicability of the MGL policy. Because Atlantic Specialty denied coverage to Stevanna, the other three entities could not recover under Stevanna's policies as putative additional insureds. The denial of coverage sparked this litigation, in which the four defendants in the Robinson case sued Atlantic Specialty for coverage under each of Stevanna's three policies.

5

## II. PROCEDURAL HISTORY

Stevanna sued first. It brought claims against Atlantic Specialty for breach of contract and bad-faith denial of insurance under Pennsylvania law; it also sought a declaratory judgment. Stevanna's original complaint sought coverage under only the P&I policy. But Stevanna amended its complaint to include claims for coverage under the MGL policy and the excess liability policy. Frank Bryan, Georgetown Sand & Gravel, and the *Timothy James* intervened, echoing Stevanna's claims and arguing that Atlantic Specialty owes them coverage as additional insureds.

The District Court proceedings initially focused on the dispute over P&I coverage. After agreeing to sever and stay the bad-faith claims, the parties all cross-moved for summary judgment on the P&I coverage dispute. The Magistrate Judge prepared a report that recommended entry of summary judgment for Atlantic Specialty because the P&I policy did not cover Robinson's claims. The District Court adopted that recommendation and granted summary judgment to Atlantic Specialty. In response, Stevanna and the intervenors requested that the District Court designate its summary judgment ruling as a final order pursuant to Federal Rule of Civil Procedure 54(b). While that motion was pending, they also filed a notice of appeal. The District Court denied the Rule 54(b) motion, which prevented its summary judgment order from becoming immediately appealable. *See Elliot v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) ("Generally, an order which terminates fewer than all claims pending in an action or claims against fewer than all the parties to an action does not constitute a 'final' order for purposes of 28 U.S.C. § 1291."). For that reason, this Court does not have appellate jurisdiction over the first of these consolidated appeals, No. 21-1420.

6

The parties then proceeded with another round of cross-motions for summary judgment. They briefed the remaining claims: those for coverage under the MGL and excess liability policies as well as those for bad-faith breach. The District Court determined that neither the MGL policy nor the excess liability policy covered Robinson's claims. Without any wrongful denial of coverage, the District Court rejected the bad-faith claims too.

After the entry of summary judgment again in favor of Atlantic Specialty, Stevanna and the intervenors timely filed a notice of appeal. Because the second summary judgment order terminated the proceedings, it constituted a final order sufficient to trigger this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; *Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (describing a typical final decision as one that "terminate[s] an action" such that the district court "disassociates itself from [the] case" (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949))). That jurisdiction extends to allow consideration of challenges to the initial summary judgment order because that order merged into the final order.

While the appeal was pending, Stevanna settled with Atlantic Specialty. The remaining appellants – Frank Bryan, Georgetown Sand & Gravel, and the *Timothy James* – have not resolved their differences with Atlantic Specialty. They continue to dispute whether Stevanna's policies cover Robinson's claims.

### III. DISCUSSION

As a dispute over coverage under a maritime insurance contract, this case comes within the admiralty jurisdiction of federal courts. *See* 28 U.S.C. § 1333(1); *AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 260 (3d Cir. 2008) ("Since the insurance

7

policy here sued on is a maritime contract the Admiralty Clause of the Constitution brings it within federal jurisdiction." (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955))); *see also* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 19:2 (6th ed. 2021 update) (stating that courts "have generally held that the principal types of marine insurance contracts" are "within admiralty jurisdiction").

The maritime nature of this case influences the applicable body of law. Maritime insurance contracts are governed by "established federal rule[s]," but state law applies when no federal rule has been established. *See Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 47 F.4th 225, 229–30 (3d Cir. 2022) ("[M]aritime contracts are governed by federal admiralty law when there is an established federal rule, but absent such a rule, state law applies." (quoting *Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009))). Though the claims were pleaded under Pennsylvania law, federal maritime law – wherever established – controls the interpretation of the maritime insurance policies.[1]

### A. The P&I Policy Does Not Extend to the *Timothy James*.

Because the *Timothy James* was not specifically identified in Stevanna's P&I policy, coverage for Robinson's claims under that policy depends on that policy's

---

[1] Stevanna and the intervenors also assert diversity jurisdiction, *see* 28 U.S.C. § 1332(a), but entertaining their assertion would require a determination of the *Timothy James*'s citizenship for purposes of the complete diversity rule, *see Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). That novel question of a vessel's state of citizenship need not be addressed here because admiralty jurisdiction alone establishes the District Court's subject matter jurisdiction, and even if there were diversity jurisdiction, it would not change governing law since established federal admiralty law would still take precedence over state law. *See Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 132 (3d Cir. 2002) ("Since we conclude that this case sounds in admiralty, we apply federal admiralty law and not the law of New Jersey or any other state. That the District Court took this case under diversity jurisdiction, rather than admiralty jurisdiction under 28 U.S.C. § 1333, does not affect this determination." (citing *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410–11 (1953); *Edynak v. Atl. Shipping, Inc.*, 562 F.2d 215, 221 n.11 (3d Cir. 1977))).

automatic-acquisition clause. That clause automatically extends coverage to "each vessel acquired, purchased, or chartered" by Stevanna. P&I Policy, Endorsement No. 4 (Mar. 10, 2014) (JA108). It is undisputed that Stevanna did not acquire or purchase the *Timothy James* – at the time of the accident, the vessel was owned by Frank Bryan, Inc. and chartered by Georgetown Sand & Gravel, Inc. Thus, for the P&I policy to cover injuries sustained from the *Timothy James*, Stevanna must have 'chartered' the vessel at the time of Robinson's injury. It did not.

As used in the automatic-acquisition clause, the term 'charter' does not refer to all arrangements in which someone borrows a boat. Because the automatic-acquisition clause is also subject to the P&I policy's as-owner requirement, the term 'charter' must mean a charter with ownership attributes. Furthermore, established federal maritime law limits P&I protection to the insured's liability "as owner of the vessel." *St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 942 (5th Cir. 1982); *see also City & Cnty. of S.F. v. Underwriters at Lloyds, London*, 141 F.3d 1371, 1372 (9th Cir. 1998) ("[A] federal admiralty rule for maritime P & I policies . . . is that P & I provisions indemnify vessel owners only if their liability arises out of their ownership of an insured vessel.").[2] Such a charter is known as a 'bareboat charter.' *See Reed v. S.S. Yaka*, 373 U.S. 410, 412 (1963) ("It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally

---

[2] *Cf.* Schoenbaum, *supra*, § 19:12 (stating that P&I policies "limit liability to that of the shipowner"); Robert T. Lemon II, *Allocation of Marine Risks: An Overview of the Marine Insurance Package*, 81 Tul. L. Rev. 1467, 1481 (2007) ("[C]overage under P&I policy forms is afforded to the named insured only for liability it incurs 'as owner of the insured vessel.' . . . Liabilities incurred by the named insured in some capacity other than 'as owner' are not protected or covered under the P&I policy."); Norman J. Ronneberg, Jr., *An Introduction to the Protection & Indemnity Clubs and the Marine Insurance They Provide*, 3 U.S.F. Mar. L.J. 1, 23 (1990) (explaining that "as owner" clauses in P&I policies have "been interpreted by the courts to mean that the assured must be liable in his 'capacity' as owner of an entered vessel to be compensated").

called owner *pro hac vice*." (footnote omitted)); *E. Coast Tender Serv., Inc. v. Robert T. Winzinger, Inc.*, 759 F.2d 280, 285 n.5 (3d Cir. 1985) (explaining that a "bare boat charterer" is "the owner *pro hac vice*" who "may seek limitation of liability [under a P&I policy] as an owner" (citing *Leary v. United States*, 81 U.S. 607, 610 (1872))).

To establish a bareboat charter, "the owner of the vessel must completely and exclusively relinquish possession, command, and navigation thereof to the [charterer]." *Guzman v. Pichirilo*, 369 U.S. 698, 699 (1962) (internal quotation marks omitted); *see also Bareboat Charter*, *Black's Law Dictionary* (11th ed. 2019) ("The charterer takes possession and operates the ship during the period of the charter as though the vessel belonged to the charterer." (quoting David W. Robertson, Steven F. Friedell & Michael F. Sturley, *Admiralty and Maritime Law in the United States* 371–72 (2002))). The undisputed facts establish that Stevanna had no bareboat charter for the *Timothy James*.

First, Georgetown Sand & Gravel paid for the maintenance and fuel for the *Timothy James*, so it did not relinquish the degree of control required by a bareboat charter. *See Martin v. Walk, Haydel & Assocs., Inc.*, 742 F.2d 246, 249 (5th Cir. 1984) (holding that a charterer lacked the "exclusive possession and control" necessary to create a bareboat charter where a different party "saw to the maintenance, repair and fueling of the boats"); *Bareboat Charter*, *Black's Law Dictionary* (11th ed. 2019) ("The [bareboat] charterer . . . pays the operating expenses [much as] the lessee-driver buys the gasoline." (quoting Robertson et al., *supra*, at 371–72)).

Second, Stevanna's owner testified that he did not view Stevanna as owning the *Timothy James* when Robinson's accident occurred. And, in completing a casualty report on the Robinson accident for the U.S. Coast Guard, he identified Georgetown Sand & Gravel as the operating company of the *Timothy James*.

Third, Frank Bryan entered into a purported "bareboat charter agreement" for the *Timothy James* with Georgetown Sand & Gravel, not with Stevanna. Yet bareboat charters must be exclusive under established federal law. *See Guzman*, 369 U.S. at 699 (requiring exclusivity); *Martin*, 742 F.2d at 249 (requiring bareboat charterer to have "exclusive possession and control" of the vessel). If indeed Georgetown Sand & Gravel had a bareboat charter for the *Timothy James* during the time of the accident, Stevanna could not have simultaneously held a bareboat charter for the same vessel.

Fourth, in contrast with Georgetown Sand & Gravel's written 'bareboat charter agreement,' Stevanna's oral agreement for the use of the *Timothy James* was terminable at will. And that typically prevents an agreement from being a bareboat charter. *See Stevens v. Seacoast Co.*, 414 F.2d 1032, 1036 (5th Cir. 1969) (holding that two parties did not create a bareboat charter where "the agreement [could] be revoked at will").

Fifth, on the day of the collision, an employee of Georgetown Sand & Gravel – not Stevanna – was piloting the *Timothy James*. By piloting the vessel, Georgetown Sand & Gravel did not completely relinquish possession, command, and navigation of the *Timothy James*, as federal law requires for a bareboat charter. *See Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993) (stating that a bareboat charterer "furnishes the crew . . . for the vessel"); *Bareboat Charter*, *Black's Law Dictionary* (11th ed. 2019) ("The [bareboat] charterer provides the vessel's master and crew (much as the lessee-driver personally drives the car) . . . ." (quoting Robertson et al., *supra*, at 371–72)).

Without Stevanna having a bareboat charter for the *Timothy James*, the automatic-acquisition clause does not extend coverage to that vessel. Thus, the District Court properly entered summary judgment for Atlantic Specialty on that issue.

11

**B. Due to Its Employer-Liability Exclusion, the MGL Policy Does Not Cover Robinson's Claims.**

Stevanna's MGL policy generally covers claims for personal injuries that Stevanna is legally obligated to pay, such as Robinson's. But the MGL policy has several exclusions, which themselves are subject to exceptions.

Relevant here is the employer-liability exclusion. This exclusion denies coverage for an employee's bodily injury "arising out of and in the course of" the employee's job. MGL Policy at 2 (Mar. 10, 2014) (JA136). Because Robinson was injured while working for Stevanna on the *Timothy James*, liability for that injury would ordinarily fall within the exclusion.[3]

But the employer-liability exclusion has an exception. Under that exception, the exclusion does not apply to liability for damages "assumed by the insured under an 'insured contract.'" *Id.* The MGL policy defines 'insured contract' to include "[t]hat part of any other contract or agreement pertaining to [Stevanna's] business . . . under which [Stevanna] assume[d] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." *Id.* at 9 (JA143). For the exception to the MGL exclusion to apply and trigger coverage, Stevanna must have assumed the intervenors' tort liability for Robinson's injuries. Merely indemnifying the intervenors for Stevanna's tortious conduct would not suffice. Yet a promise to indemnify others for

---

[3] The intervenors argue that Atlantic Specialty waived this defense by not asserting it in its letter denying coverage or in its answer. But those omissions do not amount to an implied waiver under Pennsylvania law, which applies due to the absence of an established rule of federal maritime law on waiver. *See Gemini Ins. Co. v. Meyer Jabara Hotels LLC*, 231 A.3d 839, 851 (Pa. Super. Ct. 2020) ("The doctrine of implied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom." (quoting *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (Pa. Super. Ct. 1967))); *see also Great Lakes Ins.*, 47 F.4th at 229–30 ("[M]aritime contracts are governed by federal admiralty law when there is an established federal rule, but absent such a rule, state law applies." (quoting *Royal Ins. Co. of Am.*, 563 F.3d at 73)); *Wilburn Boat Co.*, 348 U.S. at 316 (applying state law to marine insurance policy in the absence of an established federal rule).

12

the others' own tort liability is an extraordinary promise, and it must be manifested expressly and unequivocally in the contract. *See Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981) ("A contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee."); *United States v. Seckinger*, 397 U.S. 203, 211 (1970) (fashioning a rule of federal common law, though not in the admiralty context, that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties").

The intervenors seek to meet that standard with respect to Stevanna and their liability through a two-part argument. First, they contend that Stevanna orally agreed to charter the *Timothy James* on the same terms as its charter of the *John Kushner*. Next, they observe that, with respect to the *John Kushner*, Stevanna agreed to indemnify Frank Bryan, its affiliates, and the vessel from liability for injuries "caused in whole or in part by the negligence of Stevanna, its agents and employees." Bareboat Charter Agreement for the *John Kushner* at ¶ 10 (July 15, 2014) (JA316, JA320).

Even looking past any genuine disputes of material fact for the first proposition – that the agreement for the *Timothy James* had terms identical to those in the *John Kushner* agreement – the second half of the argument fails. The indemnity in the *John Kushner* agreement would not give rise to an 'insured contract' because it does not clearly evidence Stevanna's intent to assume the intervenors' own tort liability. Rather, Stevanna agreed to assume liability only where the underlying injury was "caused in whole or in part by the negligence of Stevanna, its agents and employees." *Id*. That text

13

makes Stevanna liable only for its own negligence. Yet for Stevanna's agreement to constitute an 'insured contract,' it needed to include an express term assuming liability for injuries caused by "another party," not those caused by Stevanna. MGL Policy at 9 (Mar. 10, 2014) (JA143). Without such a term, Stevanna's agreement does not constitute an 'insured contract,' so the employer-liability exclusion bars coverage in this case.

## C. The Dependent Claims – Those Under the Excess Liability Policy and for Bad-Faith Breach – Necessarily Fail.

Without coverage under the P&I policy or the MGL policy for Robinson's personal injury claim, the remaining claims collapse.

The excess liability policy does not broaden the conditions of coverage for the P&I and MGL policies. It only increases the coverage limits for those policies. And here, because those policies do not provide coverage, neither does the excess liability policy.

For essentially the same reason, the intervenors' bad-faith claims fail. Under Pennsylvania law,[4] a bad-faith claim requires a showing that the insurer had "no reasonable basis for denying" coverage. *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Thus, a bad-faith claim "necessarily fails" if the insurer "correctly concluded that there was no potential coverage under the policy." *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 (3d Cir. 2006). Because Atlantic Specialty properly denied coverage under Stevanna's three policies, the intervenors' bad-faith claims fail.

---

[4] The intervenors premise their claims on Pennsylvania statutes permitting punitive damages, enhanced interest, and attorneys' fees upon a showing of bad faith. Although the applicability of Pennsylvania law is not disputed here, and thus forfeited, it may be that federal admiralty law preempts the state statute allowing enhanced damages and fee shifting. *Cf. Sosebee v. Rath*, 893 F.2d 54, 56–57 (3d Cir. 1990) (holding that federal maritime law preempts "a local statute awarding attorneys' fees" because of "a strong interest in maintaining uniformity in maritime law"). *See generally Lakeshore Sail Charters, LLC v. Acadia Ins. Co.*, 168 F. Supp. 3d 1048, 1058 (N.D. Ill. 2016) (describing circuit split).

\* \* \*

The appeal from the District Court's initial judgment as to the P&I policy will be dismissed for lack of appellate jurisdiction.  That initial judgment, however, merged into the District Court's subsequent judgment as to the remaining claims over which there is appellate jurisdiction.  It is that subsequent judgment that will be affirmed for the foregoing reasons.